# United States Court of Appeals
## For the First Circuit

No. 19-1386

SANDRA LÓPEZ-LÓPEZ,

Plaintiff, Appellant,

v.

THE ROBINSON SCHOOL; MARÍA TERESA LARRIEU; DANIEL M. HILDEBRAND; MELVIN SANTONI-CRESPO; ÁNGEL M. NARVÁEZ-MORELL; AIG INSURANCE COMPANY-PUERTO RICO,

Defendants, Appellees,

CONTINENTAL INSURANCE COMPANY; SAN JUAN CAPESTRANO HOSPITAL, INC.; MEDICAL DEFENSE INSURANCE COMPANY; ASPEN AMERICAN INSURANCE COMPANY,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Torruella, Dyk,[*] and Barron,
Circuit Judges.

José G. Fagot Díaz, with whom Fagot Law Offices and Manuel E. López Fernández, were on brief, for appellant.
Maralyssa Álvarez-Sánchez, with whom Juan Felipe Santos-Caraballo and Jackson Lewis LLC, were on brief, for appellees The Robinson School, Inc. and María Teresa Larrieu.

_____

[*] Of the Federal Circuit, sitting by designation.

Ramonita Dieppa González, with whom Dieppa González Law Offices, LLC on brief, for appellee Melvin Santoni-Crespo.

Doris Quiñones Tridas, with whom Quiñones Tridas Law Office, PSC on brief, for appellee Ángel M. Narváez-Morell.

————————————

May 11, 2020

————————————

- 2 -

**DYK, Circuit Judge.** Sandra López-López ("Ms. López"), a teacher at the Robinson School ("Robinson") in Puerto Rico, sued the school and two school administrators (María Teresa Larrieu and Daniel Hildebrand) in the United States District Court for the District of Puerto Rico. She asserted claims under the Americans with Disabilities Act ("ADA") and Age Discrimination in Employment Act ("ADEA"), as well as under analogous Puerto Rico laws, for discrimination and retaliation.[1] The district court entered summary judgment against Ms. López. We affirm.

## I.

As this appeal arises from a grant of summary judgment, we state the facts in the light most favorable to Ms. López, the non-moving party. Alvarez-Torres v. Ryder Mem'l Hosp., Inc., 582 F.3d 47, 49 (1st Cir. 2009) (citing Levesque v. Doocy, 560 F.3d 82, 84 (1st Cir. 2009)). At this juncture, we describe the allegations central to Ms. López's ADA discrimination claim that she was forced to seek a medical examination and treatment for a psychiatric disorder as a condition of continued employment and the allegations relating to her ADA claims of retaliation. Ms. López also asserted a variety of ADEA claims. The facts

---

[1] Ms. López asserted various state law claims against Robinson, Larrieu, Hildebrand, and numerous other defendants. The district court entered judgment against Ms. López with respect to those claims, and Ms. López does not challenge that judgment on appeal except to argue that some of the state claims should be reinstated if we reverse summary judgment of her federal claims.

relating to those claims are described later in the opinion.

Ms. López has been a teacher at Robinson since 2005. The school offered the Pathways Program, which supports special needs students with mild language-based learning disabilities. For the 2015–2016 academic year, Ms. López taught Social Studies and English classes within the Pathways Program. She reported to Larrieu who was the Supervisor of the Pathways Program. On numerous occasions, the school evaluated Ms. López's performance and advised her that she needed to improve skills such as planning, organizing, and communication, and issued performance improvement plans. For instance, in May 2015, the school administrators met with Ms. López and informed her that she needed to improve in several areas, including grading, organization, communication, teamwork, and honesty.

On September 1, 2015, Larrieu visited Ms. López's 6th grade Social Studies class during a test. According to Ms. López, when Larrieu asked for her lesson plans, "the students started walking around, looking at each others' test papers, and they got a little rowdy." When Ms. López saw this, she "hit the desk because [she] had the [l]esson [p]lans in [her] hand," although she usually clapped, and she told the students that they needed to sit down. Larrieu testified that some students said that they cried during the test. After Larrieu left the classroom, she wrote an email to Jannette Santiago, the Business Operations Manager,

and Zuleyka Carmona, the Human Resources Officer, about the visit to Ms. López's classroom. Larrieu wrote that when answering the students' questions Ms. López's "interaction towards [the] students seemed odd [and was] disproportionate and rude," and that it appeared "[she] had lost control of herself . . . [and m]any of the things discussed with her in the last meeting[] [concerning her performance] were found unresolved in this visit."

The next day, on September 2, 2015, one of the students' parents complained about Ms. López's behavior during the Social Studies test, asserting that Ms. López had frightened their child by raising her voice and that the child had complained of prior similar incidents. That afternoon, Ms. López was summoned to a meeting with Larrieu (the author of the September 1 email) and Santiago and Carmona (the recipients of the email) concerning what happened in the classroom. They discussed Ms. López's communication style with the students, and Ms. López stated that "I'm firm, but with love." Santiago then told Ms. López that she would be placed on suspension pending an investigation. Upon hearing of her suspension, Ms. López "plead[ed] . . . not to suspend [her]," "that [she] did nothing to [the students]," and "[she] would never do anything to hurt a child."

Ms. López then by her own account suffered a "temporary nervous breakdown," fell to the floor, and started crying. Ms. López stated at that time "I want[] to kill myself" and

testified later that she was "in so much stress and . . . much pain." At some point, Hildebrand, the Head of Robinson at the time, came into the meeting room and helped Ms. López to get up and sit on a chair. Ms. López told Hildebrand that she "w[as]n't okay." Carmona reached out to Ms. López's emergency contacts, but none was available to help. Larrieu spoke with the school's clinical psychologist, Dr. Rita Tamargo, who recommended that the school administrator seek help and contact San Juan Capestrano Hospital ("Capestrano"), a mental health facility. Carmona called Capestrano, which recommended that Ms. López be brought in for an evaluation.

Hildebrand then told Ms. López that he wanted to take her to a "crisis center to speak with someone" and that her "job would depend on it." Ms. López told him that she had an appointment with her realtor to see an apartment so she could sign a lease that day, and that she needed to keep the appointment. Hildebrand asked Ms. López to put in writing that she would agree to go to a "crisis center" after she returned from her appointment. Ms. López wrote on a paper:

> I will listen to advise [sic]. Things are getting in the way of good intension [sic] with my students. Visit the apart. possibly available. Get an appointment. Fondo -> Get taxi to get there. Can get there own [sic] my own. Yes. I can do it safely.
>
> I will go to the appointment with appointment [sic] then go with Maritere [Larrieu] to

Capestrano. To seek help with a crisis (personal) crisis [sic]. Come back to campus. Sandra López. 5:05 p.m. Sept. 2nd, 2015.

Ms. López later testified that she did not know Capestrano was a psychiatric hospital. While Ms. López was at her appointment, Hildebrand and Larrieu spoke with Dr. Esther Pérez Prado, the school's psychologist, about Ms. López. Dr. Pérez told them that it was important to make sure Ms. López was safe by receiving an evaluation from a mental health professional and that a court order might be necessary.

After Ms. López returned from her appointment, Hildebrand and Larrieu drove her to Capestrano. At the hospital, Ms. López was interviewed by a doctor, but she refused to voluntarily admit herself. After Ms. López walked outside, the hospital staff forcefully brought her back into the building. The doctor told Hildebrand and Larrieu that they would have to get a court order to involuntarily admit Ms. López to the hospital. Hildebrand signed an "Informed Consent for Psycho-Active Medication" form and, that night, Hildebrand and Larrieu obtained a court order from the Municipal Court under Puerto Rico's Mental Health Act. The order required involuntary admission of Ms. López to allow a "psychiatric institution . . . to perform the evaluation, observation and initiate treatment" of her and permitted the institution to detain Ms. López "for a period greater than twenty-four (24) hours[]" if the institution certified that

such hospitalization was necessary. Ms. López was treated at Capestrano and released from the hospital on September 4, 2015. Thereafter, she received treatment through an outpatient program. That program certified that she would be able to return to work on September 21, 2015.

On September 18, 2015, Ms. López filed an administrative charge with the Equal Employment Opportunity Commission ("EEOC") and Puerto Rico Anti-Discrimination Unit ("ADU"), alleging that the school had discriminated and retaliated against her because of her age and perceived disability, in violation of the ADA and ADEA and their Puerto Rico law analogs. On September 21, 2015, Ms. López returned to the school and resumed her previously assigned class schedule. Also on September 21, 2015, the school placed Ms. López on a Teacher Improvement Plan ("TIP") to address her teaching skills in light of the Social Studies classroom incident and other performance issues identified in May 2015. The school provided follow-up TIPs in November 2015 and May 2016, summarizing areas that were improved and needed further improvement.

On July 20, 2016, Ms. López filed an action in the United States District Court for the District of Puerto Rico. She asserted that she was a victim of discrimination and retaliation under the ADA and ADEA as well as under the analogous Puerto Rico laws. On summary judgment, the district court ruled against

Ms. López after applying the test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) (described below). The district court held that Ms. López's ADA discrimination claim relating to the hospital incident failed. It reasoned that Ms. López failed to show a prima facie case because the school's action in taking her to Capestrano was not a prohibited discriminatory act since her compensation remained the same, i.e., there was no adverse employment action. The district court also pointed out that Ms. López "continued with the regular class schedule" when she returned to work at Robinson. It further held that, even if Ms. López had established a prima facie case, the school showed a "non-discriminatory reason for its decision to take [Ms.] López to . . . Capestrano . . . , for her suspension with pay, and for the . . . TIP" because she "suffered a nervous breakdown" and was not meeting Robinson's work performance expectations. The district court also rejected Ms. López's ADEA discrimination claims.

Lastly, the district court concluded that Ms. López on the summary judgment record had no support for her ADA and ADEA retaliation claims. Ms. López claimed that the retaliation involved being suspended on September 2, 2015, and being placed on the TIP program. The district court held that Ms. López's suspension was an adverse employment action but that Robinson "provided legitimate reasons for suspending Ms. López" in light of

her responses during the September 2 meeting and Larrieu's classroom observation. The district court also held that the TIP dated September 21, 2015, and later follow-ups were not "adverse employment actions because [Ms.] López'[s] salary and terms of employment did not change as a result of these plans."

The district court dismissed without prejudice the discrimination and retaliation claims under the analogous Puerto Rico laws against Robinson upon declining to exercise supplemental jurisdiction.

Ms. López now appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291. "We review the district court's disposition of a summary judgment motion de novo, 'scrutiniz[ing] the evidence in the light most agreeable to the nonmoving party, giving that party the benefit of any and all reasonable inferences.'" Murray v. Kindred Nursing Ctrs. W. LLC, 789 F.3d 20, 25 (1st Cir. 2015) (alteration in original) (quoting Noviello v. City of Bos., 398 F.3d 76, 84 (1st Cir. 2005)).

## II.

We first address Ms. López's ADA discrimination claim relating to the hospital visit.

### A.

Under the McDonnell Douglas framework,[2] "a plaintiff

---

[2] We apply the McDonnell Douglas burden-shifting framework

- 10 -

must first establish a prima facie case of discrimination." Raytheon Co. v. Hernandez, 540 U.S. 44, 49 n.3 (2003). "The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action." Id. If the employer does so, the plaintiff can rebut the employer's reason by offering evidence that the action was pretextual. Id.

To establish a prima face case, the plaintiff must show: "(1) that she was 'disabled' within the meaning of the ADA; (2) that she was able to perform the essential functions of her job with or without accommodation; and (3) that she was discharged or adversely affected, in whole or in part, because of her disability [(i.e., suffered an adverse employment action)]." Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 82 (1st Cir. 2008). For the first prong, Ms. López argued that she was "being regarded as having . . . an impairment [that substantially limited one or more major life activities]" under 42 U.S.C. § 12102(1)(C).[3]

---

because Ms. López did not offer direct evidence of discriminatory animus. Mancini v. City of Providence, 909 F.3d 32, 38 (1st Cir. 2018).

[3] Section 12102(1)(C) is subject to paragraph (3), which states:

> (A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the

- 11 -

Ms. López appears to argue that the school perceived her nervous breakdown to be such an impairment. The school does not contend otherwise and instead asserts that Ms. López was not subject to an adverse employment action. The district court agreed, holding that Robinson's taking of Ms. López to Capestrano did not adversely affect her employment because her salary and duties did not change. López argues that Robinson's conditioning her employment on receiving a medical examination and treatment at a hospital was an adverse employment action and that she established a prima face case of ADA discrimination.

Even assuming (without deciding) that Ms. López established a prima facie case, we conclude that the district court's summary judgment against her was proper because Robinson gave a legitimate, non-discriminatory reason for conditioning Ms. López's employment on receiving a medical examination and treatment and Ms. López failed to provide evidence from which a reasonable juror could conclude that Robinson's articulated reasons were pretextual. In reaching this conclusion, we consider

> impairment limits or is perceived to limit a major life activity.
>
> (B) Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

42 U.S.C. § 12102(3).

- 12 -

Ms. Lopez's contentions relating to examination and treatment separately.

B.

We first turn to the issue of whether Robinson gave a legitimate, non-discriminatory reason for requiring Ms. López to undergo a medical examination. Robinson asserts that the actions it took were a business necessity.

The ADA statute sets forth a business necessity test for a medical examination request. An employer may require an examination if it "is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A).[4] We understand this to be similar, if not identical, to a justification under the general test for evaluating legitimate, non-discriminatory reasons under the McDonnell Douglas framework. See Sensing v. Outback Steakhouse of Fla., LLC, 575 F.3d 145, 162 (1st Cir. 2009).

Ms. López alleges that "Hildebrand conditioned López'[s] continued employment at Robinson on her visiting a crisis center." In this case, it is apparent that requiring a medical examination

---

[4] Section 12112(d)(4)(A) provides:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

- 13 -

was a business necessity. Ms. López's undisputed nervous breakdown and statement of suicidal intent indicated that Ms. López could not perform her job as a schoolteacher at that time. When Ms. López was informed of her suspension, she became distraught, fell to the floor, and cried, stating that she wanted to kill herself. In her own words, Ms. López was "in so much stress and so much pain." She told Hildebrand that she "w[as]n't okay."

Ms. López herself seemed to recognize the need for an evaluation. Before leaving for her realtor appointment, Ms. López wrote a note to the school administrators that she would "go with [Larrieu] to Capestrano[] [t]o seek help with a . . . (personal) crisis" and that "[t]hings were getting in the way of good intension [sic] with [her] students." The school's psychologist, Dr. Tamargo, recommended seeking help and reaching out to Capestrano, and Dr. Pérez likewise suggested that Ms. López needed an evaluation by a mental health professional to ensure that she was safe. Capestrano recommended that Ms. López be brought in for an examination. The school followed those recommendations.

Cases from this circuit and other circuits have addressed similar circumstances. This court has held that an employer may be justified in requiring a medical examination of a current employee so long as it is shown to be "job-related and consistent with business necessity." <u>Grenier</u> v. <u>Cyanamid</u>

Plastics, Inc., 70 F.3d 667, 672 (1st Cir. 1995) (quoting 42 U.S.C. § 12112(d)(4)(A)); see also Sensing, 575 F.3d at 162 (holding that a medical examination requirement may constitute a "permissible non-discriminatory justification" in the context of anti-discrimination laws).[5] Our sister circuits have similarly recognized that requiring medical examinations may be justified based on business necessity where there is a basis to believe that the employee's ability to perform her job may be impaired or the employee presents a troubling behavior that would impact the work environment. See, e.g., Sullivan v. River Valley Sch. Dist., 197 F.3d 804, 811-13 (6th Cir. 1999) (holding that the school properly required its teacher to submit to a mental examination); Brownfield v. City of Yakima, 612 F.3d 1140, 1145-46 (9th Cir. 2010) (holding that the employer could require an examination where there was a legitimate basis to doubt the employee's ability to perform the duties as a police officer); Coffman v. Indianapolis Fire Dep't, 578 F.3d 559, 565-66 (7th Cir. 2009) (holding that the Fire Department could require employee to submit to a psychological evaluation when she exhibited concerns about her own condition).[6]

---

[5] Sensing involved a claim under the Massachusetts Commission Against Discrimination statute, which generally applies the same analysis as under the ADA. 575 F.3d at 153-54.

[6] See also McNelis v. Pa. Power & Light Co., 867 F.3d 411, 414-15, 417 n.4 (3d Cir. 2017) (government employer was justified in requiring an alcohol assessment); Pesterfield v. Tenn. Valley Auth., 941 F.2d 437, 438 (6th Cir. 1991) (employer could require

We conclude that the evidence was undisputed that Robinson had a reasonable basis for thinking that Ms. López needed to undergo a medical examination at Capestrano.

C.

Ms. López also argues that the school "conditioned her continued employment upon receiving psychiatric treatment." She asserts that Hildebrand "without her consent" signed an "Informed Consent for Pyscho-Active Medication" form that caused her to be involuntarily admitted at Capestrano despite her "constitutional right to refuse medical treatment."

But Robinson has provided a legitimate, non-discriminatory reason for requiring that Ms. López receive treatment. Courts have held that an employer may require an employee to undertake medical treatment as a condition of

---

employee to provide medical certification on his ability to return to work); Cody v. CIGNA Healthcare of St. Louis, Inc., 139 F.3d 595, 597–99 (8th Cir. 1998) (employer could require employee to undergo a psychiatric evaluation); id. at 599 ("An employer's request for a mental evaluation is not inappropriate if it is not obvious that an employee suffers from a disability. . . . . Employers need to be able to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims." (internal citation omitted)); Williams v. Motorola, Inc., 303 F.3d 1284, 1291 (11th Cir. 2002) ("[The employer] could have properly required a medical examination given [the plaintiff's] recent behavior and threats."); Krocka v. City of Chi., 203 F.3d 507, 515 (7th Cir. 2000) ("[T]he employer may, depending on the circumstances of the particular case [where there is a legitimate concern], require specific medical information from the employee and may require that the employee undergo a physical examination designed to determine his ability to work.").

- 16 -

employment if the employer had a legitimate reason for imposing such a requirement. See Kozisek v. Cty. of Seward, Neb., 539 F.3d 930, 933, 935 (8th Cir. 2008) (employer was justified in conditioning employment on completion of an inpatient alcohol treatment); Bekker v. Humana Health Plan, Inc., 229 F.3d 662, 666, 671–72 (7th Cir. 2000) (employer was justified in requiring its employee doctor to undergo alcohol addiction treatment and had a "legitimate nondiscriminatory reason" for discharging her when she was reported to be still under the influence of alcohol while seeing patients); McNelis v. Penn., 867 F.3d 411, 414–15 (3d Cir. 2017) (government employer was justified in declaring that its employee was not fit for duty until he received possible substance abuse treatment).

In light of Ms. López's nervous breakdown and suicidal statements, no juror could reasonably find on this record that the school lacked a sufficient basis for reaching the conclusion that Ms. López was unable to be a teacher at the time and that she was a risk to her own safety. Here, the school had a legitimate interest in requiring that Ms. López receive treatment when she went to Capestrano because she was a schoolteacher who taught young children. It is well recognized that the mental fitness of a teacher who is responsible for the well-being of young children is a legitimate business concern of the school at which she is employed. Brownfield, 612 F.3d at 1145 (reviewing cases sustaining

requirement for a psychiatric examination of school employees because of daily interactions with school-aged children); see also Pamela J. Kneisel & Gail P. Richards, Crisis Intervention After the Suicide of a Teacher, Professional Psychology: Research and Practice, Vol 19(2), 165-69 (Apr. 1988). The school had a particular interest in ensuring that Ms. López did not commit suicide. A suicide would have adversely affected both the young children and school staff.

The actions of Capestrano's doctor in involuntarily admitting Ms. López, and the action of the Puerto Rico Municipal Court in ordering her to be involuntarily admitted at Capestrano further show that no reasonable juror could find that the school lacked a basis for finding that the treatment was necessary. See Kozisek, 539 F.3d at 935 ("[I]f a [job] restriction is based upon the recommendations of physicians, then it is not based upon myths or stereotypes about the disabled . . . .") (quoting Breitkreutz v. Cambrex Charles City, Inc., 450 F.3d 780, 784 (8th Cir. 2006)). We thus conclude that Robinson gave a legitimate non-discriminatory reason to require that she receive medical treatment.

To be clear, we do not here hold that an employer has a right to require an employee to receive a medical examination or treatment whenever the employer is concerned about the employee's mental state. "Section 12112(d)(4)(A) prohibits employers from

using medical exams as a pretext to harass employees or to fish for nonwork-related medical issues and the attendant 'unwanted exposure of the employee's disability and the stigma it may carry.'" Brownfield, 612 F.3d at 1146 (quoting EEOC v. Prevo's Family Mkt., Inc., 135 F.3d 1089, 1094 n.8 (6th Cir. 1998)). Also, "the ADA does not require that a particular treatment be foisted on an unwilling participant." Buchanan v. Maine, 469 F.3d 158, 174 (1st Cir. 2006). Here, the employer's stated concerns were reasonable, well documented, supported by recommendations of its own psychologists and Capestrano medical staff, and an independent judgment of the Commonwealth court. And the school did not require that Ms. López receive a particular treatment.

### D.

Ms. López failed to provide any evidence that Robinson's articulated reasons were pretextual. See Azimi v. Jordan's Meats, Inc., 456 F.3d 228, 246 (1st Cir. 2006) ("In assessing pretext, a court's 'focus must be on the perception of the decisionmaker.'" (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991))). Ms. López's sole theory is that the school would not have allowed her to meet with her realtor if it perceived that she required immediate psychiatric evaluation and treatment. But before Ms. López left the school campus, Hildebrand made sure that Ms. López agreed to come back from her appointment and Ms. López agreed to this in writing. The fact that the school allowed

- 19 -

Ms. López to first make her appointment to sign a lease for an apartment, before visiting the hospital, does not suffice to provide a reasonable juror to find that the school's actions were pretextual.

E.

Ms. López's other arguments are equally unavailing. She argues that the district court erred by failing to address Robinson's "direct threat" defense that was pleaded as an affirmative defense. The statute generally provides a "direct threat" defense for the employer's action where the employee "pose[d] a direct threat to the health or safety of other individuals in the workplace."[7] 42 U.S.C. § 12113(b). Ms. López contends that the fact that she was allowed to leave the school campus and meet her realtor "negates any direct threat." The district court properly determined that the school articulated a "legitimate, nondiscriminatory reason," which is generally distinct from a "direct threat" defense. See, e.g., Curley v. City of N. Las Vegas, 772 F.3d 629, 632 (9th Cir. 2014); Bodenstab v. Cty. of Cook, 569 F.3d 651, 659 (7th Cir. 2009). The school did not need to rely on a "direct threat" defense to prevail on summary judgment, and thus the district court did not need to

---

[7] "The term 'direct threat' means a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation" under the ADA. 42 U.S.C § 12111(3).

address that defense.

Accordingly, we conclude that the district court did not err in granting summary judgment against Ms. López with respect to her ADA discrimination claim.

**III.**

We next turn to Ms. López's ADA retaliation claim. "To make out a prima facie retaliation claim, the plaintiff must show that: '(1) she engaged in protected conduct; (2) she experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action.'" Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 115 (1st Cir. 2013) (quoting Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004)).

Ms. López argues that she engaged in a protective activity when she filed an ADA charge with the EEOC and ADU on September 18, 2015, and that she suffered retaliatory actions when the school issued the TIP dated September 21, 2015, and the later follow-up TIPs in November 2015 and May 2016. Ms. López also claims that Robinson's "papering" of her personnel file — by including the parent complaint, a "Disciplinary Report" noting her September 2, 2015 suspension, and the Municipal Court order requiring her to be admitted at Capestrano — was retaliatory conduct. The district court held that the TIPs were not adverse employment actions but did not address the alleged "papering."

We agree with the district court that the TIPs received by Ms. López were not materially adverse actions. The TIPs that Ms. López received after she returned to the school from Capestrano were performance evaluations summarizing areas that Ms. López had improved and those which she needed further improvement. This type of evaluation, which was not even a reprimand, is normally expected in a course of employment. Indeed, Ms. López received similar performance improvement plans prior to 2015, which she does not complain to be improper. We thus conclude that the TIPs did not constitute adverse employment actions. Bhatti v. Trs. of Bos. Univ., 659 F.3d 64, 73 (1st Cir. 2011) (holding that reprimands with no tangible consequences were not "material"). Accordingly, Ms. López's ADA retaliation claim based on her placement on the TIP fails.

Ms. López's reliance on Robinson's "papering" of her personnel file with the parent complaint, Disciplinary Report, and the Municipal Court order is also without merit.[8] "Papering" may give rise to an actionable "adverse employment action" by causing materially significant disadvantages such as when an employee is subject to "systematic[] retaliat[ion]." Kim v. Nash Finch Co., 123 F.3d 1046, 1060 (8th Cir. 1997). But here there is no evidence that placing those documents into her file caused Ms. López

---

[8] The Municipal Court order was in fact placed in Ms. López's medical file rather than her personnel file.

- 22 -

"material harm" or was part of a larger pattern of retaliation. Colón-Fontánez v. Municipality of San Juan, 660 F.3d 17, 40 (1st Cir. 2011).

We thus determine that the district court properly granted summary judgment on the ADA retaliation claim against her.

**IV.**

Ms. López asserts that the district court also erred in granting summary judgment on her ADEA discrimination claims. Under the McDonnell Douglas test, an ADEA plaintiff must first make out a prima facie case for age discrimination by showing that "she was at least 40; (ii) her work was sufficient to meet the employer's legitimate expectations; (iii) her employer took adverse action against her; and (iv) . . . the employer did not treat age neutrally in taking the adverse action." Del Valle-Santana v. Servicios Legales de P.R., Inc., 804 F.3d 127, 129-30 (1st Cir. 2015).

Ms. López claims that she suffered adverse employment actions based on her age (61) because unlike younger teachers she was denied training outside Puerto Rico and was required to manually post grades and turn in her lesson plans during her class. The district court concluded that Ms. López failed to show that she suffered an adverse employment action because "never receiv[ing] trainings outside of Puerto Rico, by itself, d[id] not constitute an adverse employment action." The district court did

- 23 -

not specifically reference Ms. López's allegations regarding grading and lesson plans.

We agree with the district court that Ms. López did not establish that she suffered events that "materially change[d] the conditions of [her] employ" so as to constitute adverse employment actions. Cherkaoui v. City of Quincy, 877 F.3d 14, 25 (1st Cir. 2017) (first alteration in original) (quoting Gu v. Bos. Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002)). There is no dispute that Robinson allowed Ms. López to attend training workshops in Puerto Rico to afford her training opportunities. The fact that Ms. López was not allowed to attend workshops outside Puerto Rico cannot constitute an adverse employment action. Colón-Fontánez, 660 F.3d at 40-41 (conclusory allegation that lack of training would affect the plaintiff's career was insufficient to establish "significant, not trivial, harm"). Ms. López also complains that the school required her to post grades manually and turn in her lesson plans during her class, a requirement not applicable to younger employees. But she did not show that those requests were "more disruptive than a mere inconvenience or an alteration of job responsibilities." Cherkaoui, 877 F.3d at 25 (quoting Burns v. Johnson, 829 F.3d 1, 10 (1st Cir. 2016)); see also Marrero v. Goya of P.R., Inc., 304 F.3d 7, 24 (1st Cir. 2002) (holding that a minor increase in work responsibility was not materially adverse).

Ms. López may raise a third claim that she had a heavier

workload because of her age. The district court held that Ms. López's allegation of "having a heavier workload than younger teachers [was] speculative and unsupported by evidence." Ms. López does not clearly challenge this holding on appeal. Even if she had, Ms. López's claim would fail. During her deposition, Ms. López admitted her workload allegation was based on speculation and she "d[id]n't know what [her] other co-workers' schedules [we]re." Conclusory allegations and unsupported speculation cannot defeat summary judgment. See, e.g., J. Geils Band Emp. Benefit Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1251 (1st Cir. 1996). Ms. López also testified that she believed a certain group of teachers were "treated special because they [we]re related and [Larrieu's] best friends." However, cronyism, while perhaps unsavory, is not an age-based discrimination. See Barry v. Moran, 661 F.3d 696, 708 (1st Cir. 2011).

We therefore conclude that, because Ms. López fails to make out a prima facie case of age discrimination, the district court properly granted summary judgment against Ms. López as to her ADEA discrimination claims.

## V.

Finally, we address Ms. López's ADEA retaliation claim, which we also analyze under the McDonnell Douglas framework. Mesnick v. Gen. Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991).

Ms. López asserts that she suffered retaliation because she complained to Larrieu during the September 1, 2015, classroom visit that she felt discriminated against based on her age due to her workload, and because she filed her administrative ADEA charge with the EEOC and ADU. Ms. López argues that the school took retaliatory actions by (1) suspending her on September 2, 2015, (2) issuing TIPs after she returned to the school from Capestrano, and (3) "papering" her personnel file with the parent complaint, disciplinary report, and the Municipal Court order. Ms. López's contentions based on the TIPs and "papering" are without merit for the same reasons discussed for her ADA retaliation claims.

As for the suspension, the district court held that, while the September 2 suspension was an adverse employment action and Ms. López had engaged in protected conduct, the school had legitimate reasons to take action based on Ms. López's "responses during the criticism made at the September 2, 2015 meeting" and Larrieu's "observations during [the] classroom visit on September 1, 2015," and that Ms. López produced no evidence that rebutted those reasons. We agree that, even if Ms. López established a prima face case of ADEA retaliation, the school provided a legitimate, nondiscriminatory reason for suspending Ms. López due to Larrieu's observation during the September 1, 2015, classroom visit and Ms. López's responses during the September 2, 2015, meeting. The decision was consistent with the school's concern

with the need for Ms. López's improvement in her communication skills. Moreover, Ms. López did not provide any evidence that the school's reason was pretextual. Kelley, 707 F.3d at 115 ("If the defendant meets this burden [of articulating a legitimate, non-retaliatory reason], the plaintiff must show that the proffered legitimate reason is pretextual. . . .").

The district court therefore properly granted summary judgment against Ms. López on the ADEA retaliation claims.

## VI.

We conclude that the district court did not err in granting summary judgment of the ADA and ADEA discrimination and retaliation claims against Ms. López as well as in dismissing the claims under analogous Puerto Rico laws.

**Affirmed.**