**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**February 4, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

DONALD BAKER,

　　Plaintiff - Appellant,

v.

ALLIANCE FOR SUSTAINABLE
ENERGY, LLC, a Delaware limited
liability company,

　　Defendant - Appellee.

No. 24-1143
(D.C. No. 1:22-CV-00849-GPG-MDB)
(D. Colo.)

### ORDER AND JUDGMENT[*]

Before **McHUGH**, **BALDOCK**, and **LUCERO**, Circuit Judges.

Donald Baker appeals from the district court's grant of summary judgment to

his former employer, Alliance for Sustainable Energy, on his claims of discrimination

and retaliation under the Americans with Disabilities Act (ADA) and the

Rehabilitation Act of 1973. Exercising jurisdiction under 28 U.S.C. § 1291, we

affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.    BACKGROUND

We present the facts in the light most favorable to Mr. Baker, as appropriate on summary judgment.  *See Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 893 n.1 (10th Cir. 2017).  Mr. Baker has suffered from post-traumatic stress disorder since 2003, following his service in the Iraq war.  From 2009 to 2020, he worked for Alliance as a research technician at a National Renewable Energy Laboratory (NREL) wind site in Boulder, Colorado.  Mr. Baker's job consisted of a mix of office and field work, the latter of which could be hazardous.  His duties included training his coworkers to safely operate and maintain heavy industrial equipment.

In April 2019, Mr. Baker discovered that his immediate supervisor, Scott Wilde, had forged Mr. Baker's initials on maintenance records.  He reported the incident first to a coworker and then to Alliance management, which initiated an investigation.  Before the investigation could be completed, however, the forged documents had disappeared.  After this incident, Mr. Baker's relationship with Wilde deteriorated rapidly, leading to number of altercations between them, both personal and professional.  Examples of their animosity include Wilde threatening to have Baker removed from the field in response to Baker expressing safety concerns, Wilde accusing Baker of shooting a firearm at him, and Baker accusing Wilde of vandalizing his motorcycle.

During this turbulent time, Mr. Baker often shared his mounting frustrations with coworkers via email.  In one email sent October 18, 2019, to Alliance's management, human resources, and safety departments, Mr. Baker expressed

concerns about various safety lapses that he blamed largely on Wilde's poor leadership. He also admitted that his own performance had been lacking for years and said he did not intend to remain at NREL for another fiscal year. Five days later, he sent an email to his coworkers stating, "[t]his place is getting to me and I have been on the offensive dealing with that other thing for the last 6 months." R. vol. 3, at 205. In that email, Mr. Baker apologized for his behavior and rash decision-making. On November 5, 2019, he sent another long email to numerous coworkers at 4:07 a.m. Mr. Baker complained about being unable to sleep "yet again," and proceeded to "vent" about his safety concerns being ignored. *Id.* at 101-02. The email labeled Wilde "nothing but an imposter and a fraud" and accused him of "stolen valor." *Id.* at 102. Mr. Baker also referenced "22 brothers laying 6 feet under who took their own lives because of the atrocities of war" in connection with the stolen valor comment. *Id.*

The November 5 email prompted Alliance's senior H.R. manager to consult the in-house legal department, who advised her to put Mr. Baker on leave pending a fitness-for-duty examination with an independent clinical psychologist. The exam, conducted by Dr. Evan Axelrod, determined that Mr. Baker was experiencing "significant psychological distress" and was not fit for duty. *Id.* at 156. Among other requirements, Dr. Axelrod recommended that Mr. Baker undergo a psychiatric evaluation and participate in counseling before being allowed to return to work. Alliance adopted those recommendations and told Mr. Baker that he would remain on

3

leave pending satisfaction of the fitness-for-duty requirements set forth in Dr. Axelrod's report.

In the Spring of 2020, Mr. Baker went back and forth with Alliance's H.R. department regarding his efforts to comply with the fitness-for-duty requirements. He told Alliance that his own doctor determined he was fit for duty, but because his doctor found no serious health condition, there was nothing to document. Mr. Baker also reported that he had completed counseling. Alliance responded that Mr. Baker's self-report was insufficient and that he needed to provide documentation from a health care provider demonstrating his satisfaction of the fitness-for-duty requirements. Mr. Baker complained about Alliance taking too long to provide necessary paperwork, and Alliance again reiterated it was Mr. Baker's responsibility to document his fitness for work. Ultimately, sensing a stalemate, Alliance scheduled Mr. Baker for a return-to-work exam with Dr. Axelrod on April 29, 2020. Mr. Baker refused. Instead, on April 28, he sent an email to Alliance stating he had "no choice but to resign on the grounds of a constructive discharge." *Id.* at 169.

## II.    PROCEDURAL HISTORY

Mr. Baker alleged five claims under the ADA and Rehabilitation Act: (1) discrimination based on his PTSD diagnosis; (2) retaliation; (3) discrimination under the "regarded as" clause of the ADA; (4) discrimination under the "record of" clause of the ADA; and (5) failure to accommodate. Mr. Baker voluntarily dismissed his failure-to-accommodate claim, and the district court entered summary judgment against him on the remaining claims and dismissed the complaint. The basis for the

district court's decision, and the issue underlying Mr. Baker's many complaints on appeal, stems from his failure to satisfy the fitness-for-duty requirements set forth in Dr. Axelrod's report. The district court concluded Alliance was justified in requesting the fitness-for-duty exam in the first place and then in requiring Mr. Baker to complete the necessary steps before returning to work. Because he failed to do so, the court found he could not show he was able to perform the essential functions of his job and therefore he necessarily failed to establish a prima facie case of discrimination under the ADA and Rehabilitation Act.

The court granted summary judgment on the retaliation claim because it concluded Mr. Baker failed to establish an adverse employment action and because, even if he had, there was no causal connection between the adverse action and protected activity under the ADA.

III.    DISCUSSION

A.  Standard of Review

Mr. Baker asserts numerous arguments on appeal, many of which were not asserted in the district court. For example, he argues on appeal that Alliance failed to provide reasonable accommodations for his anxiety, including a schedule change and permission to bring a service dog to work. He also claims Alliance retaliated against him for making such accommodation requests. But Mr. Baker did not assert these arguments below. In the district court, he dismissed his fifth claim for relief, which was his failure-to-accommodate claim, and based his retaliation claim on an EEOC inquiry. Mr. Baker does not explain why we should consider arguments that he

5

abandoned or failed to raise below. Accordingly, "we find no reason to deviate from the general rule that we do not address arguments presented for the first time on appeal." *United States v. Mora*, 293 F.3d 1213, 1216 (10th Cir. 2002). Nor will we consider the arguments made for the first time in Mr. Baker's reply brief. *Id.*

We address Mr. Baker's preserved arguments below, applying the same standards as the district court and reviewing its decision de novo. *See Williams*, 849 F.3d at 895. We note Mr. Baker was represented by counsel in the district court but is proceeding pro se on appeal. As such, we have accorded Mr. Baker's briefs a liberal construction and made allowances for his failure to cite proper legal authority and confusion of certain legal principles. *See Garrett v. Selby Connor Maddux & Janner*, 425 F.3d 836, 840 (10th Cir. 2005). But the court does not assume the responsibility of acting as advocate for the pro se litigant in constructing arguments and searching the record. *Id.*

B. ADA Discrimination[1]

Mr. Baker concedes he has no direct evidence of discrimination. Accordingly, "we apply the familiar *McDonnell Douglas* burden-shifting framework[,]" which requires the plaintiff to first establish a prima facie case of discrimination. *Williams*, 849 F.3d at 896. To establish a prima facie case, Mr. Baker must show that (1) he is disabled under the ADA; (2) he is qualified, with or without reasonable

---

[1] Claims of discrimination under the ADA and Rehabilitation Act are analyzed together. *See Rivero v. Bd. of Regents of the Univ. of N.M.*, 950 F.3d 754, 758 (10th Cir. 2020).

accommodation, to perform the essential functions of his job; and (3) he suffered discrimination because of his disability. *See EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1037-38 (10th Cir. 2011). We agree with the district court that Mr. Baker failed at step two.

The ADA generally prohibits employers from requiring employees to undergo medical examinations. 42 U.S.C. § 12112(d)(4)(A).[2] But there is an exception when the exam "is shown to be job-related and consistent with business necessity." *Id.*; *see Williams*, 849 F.3d at 900-01 (analyzing claim under § 12112(d)(4)(A)). Fitness-for-duty exams are justified under the business-necessity test "where there is a basis to believe that the employee's ability to perform her job may be impaired or the employee presents a troubling behavior that would impact the work environment." *Lopez-Lopez v. Robinson Sch.*, 958 F.3d 96, 105 (1st Cir. 2020); *see also id.* at 105-06 (citing cases upholding fitness-for-duty examinations); *Cody v. Cigna Heatlhcare of St. Louis*, 139 F.3d 595, 599 (8th Cir. 1998) ("Employers need to be able to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims . . . .").

Mr. Baker contends the fitness-for-duty exam required of him was unlawful for two reasons. First, he argues the exam was unjustified because he did not pose a danger to the workplace. In support, he compares his behavior to other employees,

---

[2] Mr. Baker did not assert a separate claim under § 12112(d)(4)(A), but because all his arguments depend on the propriety of the fitness-for-duty examination, we look to caselaw construing that provision, as did the district court.

whom he claims violated safety rules without being subjected to fitness-for-duty exams. Second, he argues the exam itself was unreliable because Alliance never provided Dr. Axelrod with a list of his job's essential functions.

Mr. Baker's first argument is based on his subjective belief that, because he did not present a safety concern, Alliance had no legitimate basis to request a fitness-for-duty exam. But the relevant inquiry is not based on either party's subjective belief about whether the exam was justified. Rather, the business-necessity test under § 12112(d)(4)(A) is an objective one. *Tice v. Centre Area Transp. Auth.*, 247 F.3d 506, 518 (3d Cir. 2001). We look for "significant evidence that could cause a *reasonable person* to inquire as to whether an employee is still capable of performing his job." *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 811 (6th Cir. 1999) (emphasis added). At the same time, we must consider the employer's judgment concerning the job's requirements, or essential functions. *Mason v. Avaya Commc'ns*, 357 F.3d 1114, 1119 (10th Cir. 2004). "We will not second guess the employer's judgment when its description is job-related, uniformly enforced, and consistent with business necessity." *Id.*

We agree with the district court that Alliance has shown its request for a fitness-for-duty exam was job related and supported by business necessity. It is axiomatic that "an employee's ability to handle reasonably necessary stress and work reasonably well with others are essential functions of any position." *Owusu-Ansah v. Coca-Cola Co.*, 715 F.3d 1306, 1311 (11th Cir. 2013) (internal quotation marks omitted); *see Sullivan*, 197 F.3d at 812 (observing that employers may request a

8

psychological assessment "when aberrant behavior . . . affects an employee's job performance"). Mr. Baker plainly was struggling with these essential functions. The record, as well as his own appellate briefing, is replete with evidence of the mental toll exacted by the feud between him and his immediate supervisor. Mr. Baker admits that his job could be hazardous and required intense concentration (ironically, this whole case seems to stem from Alliance's refusal to take his safety concerns seriously). The feud with Wilde was causing Mr. Baker to lose sleep and behave rashly at work, including sending increasingly alarming emails to his coworkers, one of which prompted Alliance to consult its lawyers. We agree with the district court that Alliance was reasonable in taking that step and in following its lawyers' recommendation concerning the fitness-for-duty exam. *See Owusu-Ansah*, 715 F.3d at 1311-12 (upholding mental fitness-for-duty examination of employee who exhibited extreme stress in the workplace); *Lopez-Lopez*, 958 F.3d at 106 (same).

Mr. Baker complains that other employees, specifically Syhoune Thao, committed safety violations on the job without being subjected to fitness-for-duty exams. But Mr. Thao's alleged safety violations concerned mishandling of equipment, not aberrant behavior giving rise to concerns about his mental health. Accordingly, Mr. Baker cannot point to Alliance's treatment of Mr. Thao as evidence of discriminatory intent. *See Tice*, 247 F.3d at 518 ("If we are to compare the application of an [independent medical exam] across employees, we must first establish that the employees are, in fact, similarly situated.").

9

Mr. Baker's second argument stems from Alliance's failure to provide Dr. Axelrod with a list of the essential functions of Mr. Baker's job. It is undisputed that Alliance did not have a written job description for Mr. Baker's position. Accordingly, when Alliance engaged Dr. Axelrod, it described Mr. Baker's job, provided a copy of Mr. Baker's past performance evaluation, and relied on Mr. Baker to fill in information as necessary during the evaluation. Mr. Baker argues this interfered with his rights under the Family Medical Leave Act and prevented Dr. Axelrod from producing a reliable report.

We reject this argument. First, Mr. Baker did not bring an FMLA interference claim. *See, e.g.*, *DeFreitas v. Horizon Inv. Mgmt. Corp.*, 577 F.3d 1151, 1159 (10th Cir. 2009) (setting forth elements of such a claim). Accordingly, the district court did not err in construing his essential-functions argument under the framework for addressing discrimination claims under the ADA. "In any disability-discrimination claim, the plaintiff must show that he is able to perform the essential functions of his job." *Adair v. City of Muskogee*, 823 F.3d 1297, 1307 (10th Cir. 2016). Courts consider many factors in determining whether a particular function is essential. *See id*. at 1307-08 (listing factors). Among those factors is "the employer's judgment as to which functions are essential," and we must defer to that judgment. *Id.*; *see also Mason*, 357 F.3d at 1119-22.

Fortunately, this case does not concern an esoteric essential function unique to a particular job. The question before Dr. Axelrod was merely whether Mr. Baker was mentally fit to be in the workplace given the hazardous nature of his job, the level of

10

concentration it required, and the obvious stress he was experiencing. Mr. Baker concedes that being at work and working safely were among the essential functions of his job. R. vol. 4, at 280; *see also Mason*, 357 F.3d at 1119 (recognizing that "physical attendance in the workplace is itself an essential function of most jobs"). And we have already stated that being able to handle reasonably necessary stress and get along reasonably well with colleagues is also an essential function of most jobs. After interviewing Mr. Baker and administering psychological testing, Dr. Axelrod concluded he was not fit to be in the workplace. This was consistent with Mr. Baker's own report. It is undisputed he told Dr. Axelrod he "would not be fit for duty as long as Wilde remained at NREL." R. vol. 4, at 351. Mr. Baker also admits that he stopped attending daily safety meetings because they were run by Wilde.

Under these circumstances, it was not unreasonable for Alliance to rely on Dr. Axelrod's report. Nor was it unreasonable for Alliance to insist that Mr. Baker take the recommended steps before returning to work. *Cf. Sullivan*, 197 F.3d at 813 (holding employee's suspension for refusing to undergo valid medical exam was not discriminatory under the ADA). Having failed to take those steps or produce documentation from a healthcare provider indicating he was fit for duty, we conclude Mr. Baker did not show he was qualified to perform the essential functions of his job. Accordingly, he did not establish a prima facie case of discrimination under the ADA.

C. ADA Retaliation

The ADA prohibits retaliation in response to an employee's assertion of rights under the Act. *Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1186 (10th Cir. 2016). To establish a prima facie case of retaliation, Mr. Baker had to prove that (1) he engaged in "protected activity;" (2) he "was subjected to an adverse employment action subsequent to or contemporaneous with the protected activity;" and (3) "there was a causal connection between the protected activity and the adverse employment action." *Id.* at 1186-87 (internal quotation marks omitted). Mr. Baker claims Alliance retaliated against him in response to an April 23, 2020, email in which he informed Alliance he had contacted the EEOC.[3] Under his theory, Alliance scheduled the second examination with Dr. Axelrod soon after learning he had contacted the EEOC, thus evidencing discriminatory intent. He further argues that because the examination was unjustified, he had no choice but to resign and was therefore constructively discharged.

His theory is untenable for several reasons. First, as the district court noted, the return-to-work examination with Dr. Axelrod was not scheduled in a vacuum. That exam was scheduled in the context of several back-and-forth emails in which

---

[3] Mr. Baker's retaliation claim has evolved. In his EEOC Charge of Discrimination, he said he was retaliated against for reporting the misconduct of Scott Wilde. In his summary judgment briefing, he argued the retaliation was in response to his contact with the EEOC. On appeal, he argues Alliance also retaliated against him for requesting accommodations, namely bringing a service dog to work and a schedule change. As previously noted, we do not consider arguments that he abandoned or failed to assert in the district court.

Alliance repeatedly asked for documentation indicating Mr. Baker was fit to return to work. We have already concluded the initial exam was justified under the business-necessity test. And we further conclude that in light of Mr. Baker's failure to complete the steps required for him to return to work, Alliance's request for a follow-up exam with Dr. Axelrod was also justified. "[A]n examination ordered for valid reasons can neither count as an adverse job action nor prove discrimination." *Sullivan*, 197 F.3d at 813.

Second, although constructive discharge is an adverse employment action, *Rivero v. Bd. of Regents of the Univ. of N.M.*, 950 F.3d 754, 761 (10th Cir. 2020), Mr. Baker was not constructively discharged; he chose to resign. Constructive discharge is an objective inquiry. *Id.* It "occurs when a reasonable person in the employee's position would view the working conditions as intolerable." *Yearous v. Niobrara Cnty. Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997). "If an employee resigns of [his] own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged." *Rivero*, 950 F.3d at 761 (internal quotation marks omitted). "Essentially, [Mr. Baker] must show that [he] had *no other choice* but to quit." *Id.* (internal quotation marks omitted). Mr. Baker had other choices but he voluntarily chose to end his employment relationship with Alliance. As a matter of law, this was not a constructive discharge. Accordingly, Mr. Baker's resignation did not constitute an adverse employment action for purposes of a retaliation claim under the ADA.

We grant the motion to proceed without prepayment of costs or fees.  The judgment of the district court is affirmed.

Entered for the Court

Carlos F. Lucero
Circuit Judge