FILED
United States Court of Appeals
Tenth Circuit

February 24, 2020

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DENNIS P. RIVERO, M.D.,

    Plaintiff - Appellant,

v.

BOARD OF REGENTS OF THE
UNIVERSITY OF NEW MEXICO, d/b/a
University of New Mexico Health Sciences
Center,

    Defendant - Appellee.

No. 18-2158

_____

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:16-CV-00318-JB-SCY)**
_____

Eric D. Norvell, Eric D. Norvell, Attorney, P.A., Carlsbad, California, argued on behalf
of the Appellant.

Lawrence M. Marcus (Alfred A. Park, with him on the brief), Park & Associates, L.L.C.,
Albuquerque, New Mexico, argued on behalf of the Appellee.
_____

Before **LUCERO**, **EBEL**, and **HARTZ**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.
_____

Dr. Dennis P. Rivero appeals the summary judgment awarded the University of

New Mexico Board of Regents (Defendant) by the United States District Court for the

District of New Mexico. He also challenges the district court's denial of his motion to recuse the district judge under 28 U.S.C. § 455. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm. Dr. Rivero's claim that he was required to submit to psychiatric examinations in violation of the Rehabilitation Act is barred as untimely. His claim that he was constructively discharged in violation of the Act fails because the evidence he presented did not support a claim that his working conditions were objectively intolerable. And we reject his recusal arguments on the ground that he has failed to challenge the district court's ruling that his motion to recuse was untimely.

## I.    BACKGROUND

Dr. Rivero was employed full-time by the University of New Mexico Hospital (UNMH) from 1992 until early 2007, when he voluntarily decreased his workload to one day per month while he worked full-time in Oklahoma. After several months on this schedule, Dr. Rivero asked the chair of the UNMH orthopedics department, Dr. Robert Schenck, if he could return to full-time or three-quarter-time employment. For several years nothing came of this request, and Dr. Rivero continued to work in Oklahoma while spending only one day per month performing surgeries at UNMH. Then, in December 2010, Dr. Schenck and Dr. Rivero agreed that Dr. Rivero could gradually reach a three-quarter-time position if he complied with certain conditions. In particular, Dr. Rivero would "attend four counseling sessions" before his workload would be increased. *Rivero v. Bd. of Regents of the Univ. of N.M.*, No. CIV 16-0318 JB/SCY, 2019 WL 1085179, at *7 (D.N.M. March 7, 2019).

2

In February 2011, UNMH sent Dr. Rivero an addendum to his employment contract (the Addendum) to formalize the terms of the agreement. The Addendum described the counseling sessions as a "four-part psychiatric evaluation," required Dr. Rivero to submit progress reports from the psychiatrist to the department chair, and mandated Dr. Rivero's resignation if he failed to comply with the psychiatrist's treatment recommendations. Aplt. App., Vol. 1 at 37–38. Dr. Rivero was given until April 10 to sign the Addendum. He was "shocked by the requirements of the Addendum" and undertook "to investigate any support whatsoever for the requirement of a psychiatric investigation" by seeking access to his personnel files. *Rivero*, 2019 WL 1085179, at *9. The University refused to turn over his files and withdrew the Addendum about two weeks later. Dr. Rivero continued to work one day a month at UNMH.

After UNMH refused to let Dr. Rivero see his personnel files, he petitioned for a writ of mandamus in New Mexico state court on August 11, 2011, seeking an order that UNMH provide him access to the files. On August 12, 2013, the court ordered production of the files, and by January 2014 Dr. Rivero had received his complete files. He resigned from his position with UNMH on May 21. His letter of resignation explained: "Now that I know with certainty, upon review of all of the documents produced by UNMHSC, that there is nothing which could have warranted a psychiatric evaluation, or the other terms of the 'Addendum,' I can no longer work at an institution that has treated me in this manner." Aplt. App., Vol. 1 at 138.

Dr. Rivero unsuccessfully pursued relief with the Equal Employment Opportunity Commission (EEOC) by filing a complaint in January 2012. After receiving a right-to-sue letter from the Commission in January 2016, he filed the complaint in this case on April 19, 2016, alleging that UNMH violated the Rehabilitation Act by (1) requiring psychiatric evaluations and (2) constructively discharging him on the basis of a perceived disability. Both parties moved for summary judgment in early December 2017.

The district judge, who was assigned to the case in October 2017, disclosed in letters to the parties on January 23 and June 22, 2018, that he had several ties to the University of New Mexico. He asserted that he believed that he could be "fair and impartial" and neither party objected. *Rivero*, 2019 WL 1085179 at \*24, 31. At the hearing on June 26, the judge stated that he intended to rule in favor of Defendant and would later issue an opinion. Dr. Rivero moved to recuse the judge on July 17. The district court entered summary judgment against Dr. Rivero and denied his motion to recuse on March 7, 2019.[1]

---

[1] Dr. Rivero asks us to hold that an order entered by the district court on September 24, 2018, is the "operative" order for purposes of his appeal. He does not explain why that would make a difference to his appeal. In any event, that order was not a final, appealable order. The district court indicated that the order was interlocutory, and when Dr. Rivero filed a notice of appeal from that order, we abated the appeal until the district court entered final judgment on March 7, 2019, along with a Memorandum Opinion and Revised Order.

## II.    DISCUSSION

### A.    Rehabilitation Act Claims

"We review *de novo* a grant of summary judgment, applying the same standard that governs the district court." *Lauck v. Campbell Cty.*, 627 F.3d 805, 809 (10th Cir. 2010). Summary judgment is appropriate when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, makes it unlawful to discriminate solely on the basis of disability under any program or activity receiving federal financial assistance or conducted by a federal executive agency or the United States Postal Service. *See* 29 U.S.C. § 794(a). Whether § 504(a) has been violated by employment discrimination is to be determined using "the standards applied under title I of the Americans with Disabilities Act of 1990 [(the ADA).]" 29 U.S.C. § 794(d).[2] Because the Rehabilitation Act incorporates standards from the ADA, "[c]ases decided under section 504 of the Rehabilitation Act are . . . applicable to cases brought under the ADA and vice versa, except to the extent the ADA expressly states otherwise." *Woodman v. Runyon*, 132 F.3d 1330, 1339 n.8 (10th Cir. 1997).

---

[2] Section 504(d) of the Rehabilitation Act incorporates employment-discrimination standards from other provisions of the ADA in addition to title I, *see* 29 U.S.C. § 794(d), but they are not relevant to Dr. Rivero's claims.

5

## 1. Dr. Rivero's Medical-Examination Claim

Defendant does not contest that one of the ADA provisions incorporated into the Rehabilitation Act is 42 U.S.C. § 12112(d)(4)(A), which states:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

*See Lee v. City of Columbus, Ohio*, 636 F.3d 245, 252 (6th Cir. 2011) (This "limitation[ ] on the disclosure of medical information . . . [is] incorporated by reference into the Rehabilitation Act."). The prohibitions in § 12112(d)(4) apply to all employees regardless of their disability status. *See Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1229 (10th Cir. 1997) ("[T]he . . . challenge plaintiff has brought [for an unlawful medical inquiry under 42 U.S.C. § 12112(d)(4), *see id*. at 1226] does not require her to meet the statutory definition of a person with a disability."). To establish an unlawful-examination-or-inquiry claim, a plaintiff must show only "(1) that he is an employee of the defendant-employer, and (2) that the defendant-employer required him to undergo a medical examination or made a disability-related inquiry of him." *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 901 (10th Cir. 2017). "[I]f the plaintiff makes the required showing, the employer may avoid liability by demonstrating that the medical examination or disability-related inquiry was job-related and consistent with business necessity." *Id.*

6

Dr. Rivero claims that UNMH violated the Rehabilitation Act when it conditioned his future full-time employment on his being subjected to psychiatric examinations and treatment. The district court dismissed Dr. Rivero's claim as untimely. It ruled that the limitations period for the claim was three years[3] and that the claim accrued (so that the limitations period began to run) when Dr. Rivero knew or should have known of facts establishing the elements of a prima facie case. It determined that the evidence was undisputed that Dr. Rivero knew of the terms of the Addendum to his employment contract by March 9, 2011, when he sent an email requesting additional time to decide whether to agree to the terms. The limitations period therefore expired in March 2014, well before Dr. Rivero filed suit in April 2016.

Dr. Rivero does not dispute that the applicable limitations period is three years and that he was aware of the psychiatric-examination requirement in March 2011.[4] Nor does he dispute that by March 2011 he had sufficient evidence to establish a prima facie case on the elements of an unlawful-medical-inquiry claim set forth in *Williams*.

Rather, what Dr. Rivero argues is that he had the burden to plead facts showing that there was no business-necessity justification for UNMH to require the psychiatric

---

[3] The court followed our caselaw stating that the limitations period for Rehabilitation Act claims is determined by reference to the most closely analogous state law. *See Rivero*, 2019 WL 1085179 at *75 (citing *Levy v. Kan. Dept. of Soc. and Rehab. Servs.*, 789 F.3d 1164, 1171–72 (10th Cir. 2015)). The court then used the three-year limitations period in New Mexico's statute of limitations for personal-injury claims. *See* N.M. Stat. Ann. § 37-1-8 (West 2019).

[4] He does not argue that the limitations period was tolled while his EEOC complaint was being considered by the agency.

examination and treatment, and therefore his claim did not accrue until he had completed his investigation into whether UNMH had such a justification. Because that investigation was not completed until early 2014, when he received access to his personnel files and "understood" that there was no business-necessity justification for the psychiatric-examination requirement, he asserts that the three-year limitations period did not expire before 2017. Aplt. Br. at 27.

Our precedents foreclose this argument. As previously indicated, business necessity is an affirmative defense on which the employer has the burden of persuasion. *See Williams*, 849 F.3d at 901 ("[T]he employer may avoid liability by demonstrating that the medical examination or disability-related inquiry was job-related and consistent with business necessity."); *Taylor v. City of Shreveport*, 798 F.3d 276, 286–87 (5th Cir. 2015) ("Business necessity is an affirmative defense, so it is generally inappropriate to dismiss a medical inquiry/examination claim at the [Fed. R. Civ. P.] 12(b)(6) stage on business necessity grounds."); *Lee*, 636 F.3d at 252, 254 n.7 (referring to "defendant's affirmative defense of business necessity" in claim under 42 U.S.C. § 12112(d)(4)); *Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 97 (2nd Cir. 2003) (employer has burden of proving "the business necessity defense" in claim under § 12112(d)(4)(A)); *see also Wetherbee v. Southern Co.*, 754 F.3d 901, 903 (11th Cir. 2014) (same regarding claim under § 12112(d)(3)). A plaintiff has no burden to anticipate an affirmative defense and plead facts negating it. *See Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) ("A plaintiff need not anticipate in the complaint an affirmative

8

defense that may be raised by the defendant; it is the defendant's burden to plead an affirmative defense.") Therefore, Dr. Rivero could file a proper claim for relief without investigating possible affirmative defenses.[5]

Dr. Rivero contends that our decision in *Williams* is inconsistent with the Supreme Court's opinions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), which imposed heightened pleading standards on plaintiffs. But those opinions addressed only *how* a plaintiff must allege facts supporting the elements of the plaintiff's cause of action, not *what* those elements are. In any event, *Williams*, which postdated *Iqbal* and *Twombly*, is binding precedent in this circuit, and we must follow it absent intervening statutory amendments or Supreme Court decisions. *See In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) (requiring panels to follow circuit precedent).[6]

---

[5] We decline to decide whether Fed. R. Civ. P. 11 could be the basis for tolling the limitations period while the employee investigates whether he has a good-faith basis to believe that his claim would not be frivolous in light of a business justification for an allegedly unlawful examination. Dr. Rivero did not make this argument in his opening brief or his reply brief and raised the issue for the first time at oral argument. *See Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1122 n.7 (10th Cir. 2014) (declining to consider argument made during oral argument when it had not been adequately briefed).

[6] We disagree with Dr. Rivero's contention that *Williams* is inconsistent with our earlier decision in *Baker v. Board of Regents of the State of Kansas*, 991 F.2d 628 (10th Cir. 1993). Although *Baker* does contain a stray statement (which was unnecessary for the holding and therefore dictum) that could be read to mean that the cause of action in a reverse-discrimination case does not accrue until the plaintiff knows of the reason for the injurious action, it also states that the cause of action accrues when the plaintiff knows or has reason to know of the injury. *See id*. at 632. Regardless, in that case the reason for the injurious action was at least relevant to the elements of the plaintiff's reverse-

9

We therefore affirm the district court's grant of summary judgment against Dr. Rivero on this claim because it is time barred.

### 2. Constructive Discharge

Dr. Rivero's other claim under the Rehabilitation Act is that the conduct of those at UNMH was so offensive that his resignation was a constructive discharge. We look to the ADA for the elements of the claim. *See Woodman*, 132 F.3d at 1339 n.8. "To sustain [an employment-discrimination] claim under the ADA, [the plaintiff] must show that he (1) was disabled; (2) was qualified . . . , and (3) suffered adverse employment action because of the disability." *Mathews v. Denver Post*, 263 F.3d 1164, 1167 (10th Cir. 2001); *see Martin v. Kansas*, 190 F.3d 1120, 1129 (10th Cir. 1999) ("To prevail on a claim of discriminatory discharge under the ADA, a plaintiff must show that (1) he or she is 'disabled' within the meaning of the ADA; (2) he or she is a 'qualified individual' . . . ; and (3) that he or she was terminated because of his or her disability."), *overruled on other grounds by Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001).

"Constructive discharge is an adverse employment action." *Strickland v. United Parcel Serv.*, 555 F.3d 1224, 1230 n.4 (10th Cir. 2009); *see Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 980 (10th Cir. 2008) ("Even if an employee resigns, the plaintiff may still satisfy the adverse employment action requirement by demonstrating that he was constructively discharged."). "A claim of constructive discharge . . . has two basic

---

discrimination claim. In contrast, UNMH's reasons for requiring Dr. Rivero to undergo psychiatric examinations and treatment are relevant only to its affirmative defense.

elements[:]  [F]irst that [the plaintiff] was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign. . . . [Second,] that he actually resigned." *Green v. Brennan*, 136 S. Ct. 1769, 1777 (2016). "Essentially, a plaintiff must show that she had *no other choice* but to quit.  The conditions of employment must be objectively intolerable[.]" *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 534 (10th Cir. 1998) (citation and internal quotation marks omitted). "If an employee resigns of her own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged." *Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005).

The district court noted that there was no dispute that Dr. Rivero was a qualified individual and had resigned.  But it held that he had not presented adequate evidence of the other elements of his claim.  In particular, there was no evidence of the requisite discriminatory intent.  The court said that "there is no evidence of any discriminatory actions that UNM took against Dr. Rivero because of a perceived disability, an essential element of his claim." *Rivero*, 2019 WL 1085179 at *96.

In any event, regardless of whether UNMH acted with discriminatory intent, Dr. Rivero's constructive-discharge claim fails on the merits.  The offensive treatment at work about which he complains all occurred more than three years before he resigned. He was offended by the Addendum presented to him in February 2011, but it was withdrawn that April.  Although it was not until January 2014 that he was able to confirm that his personnel files contained nothing that would support the requirement of a

11

psychiatric investigation, he had believed from the outset that there was no support for the requirement, and he has never indicated that he was surprised by the contents of his files. We do not think that a reasonable person could find a job intolerable because of something that happened to him three years earlier.

Dr. Rivero also complains about UNMH's failure to provide him his personnel files until the court ordered that they be produced. But there is no evidence that withholding the files affected his work routine or work environment in any respect other than his displeasure with UNMH's litigation position. And, again, he was fully aware of that position years before he resigned. We further note that his appellate briefs fail to point to any evidence in the record of hostile testimony or actions by his supervisors or coworkers in the mandamus action after it was filed in August 2011. The withholding of files and the mandamus litigation do not support Dr. Rivero's claim of intolerable working conditions.

In sum, a three-year-old request for medical examinations, which was soon withdrawn without any change in the present terms of employment, does not create a job environment that a reasonable person would consider intolerable and cannot be the basis of a constructive discharge.[7] It is not surprising that Dr. Rivero has not apprised us of any judicial decision affirming a constructive discharge in such circumstances, and we have found none. *See Gerald v. Univ. of Puerto Rico*, 707 F.3d 7, 26 (1st Cir. 2013) ("If

---

[7] Dr. Rivero has not argued that he was subjected to a discriminatory failure to promote or that UNMH constructively discharged him by failing to allow him to return to full-time employment without completing a psychiatric examination.

12

a plaintiff does not resign within a reasonable time period after the alleged harassment, he was not constructively discharged." (internal quotation marks omitted)); *Manatt v. Bank of Am.*, 339 F.3d 792, 804 (9th Cir. 2003) ("[Plaintiff's] constructive discharge claim is untenable in light of the fact that the alleged racially offensive work environment ended in March 1998, but [plaintiff] did not quit working for the Bank until April 21, 2000."); *Montero v. AGCO Corp.*, 192 F.3d 856, 861 (9th Cir. 1999) (no constructive discharge when sexually harassing behavior "ceased three to four months before she left [her job]"); *cf. Baca*, 398 F.3d at 1214–15, 1218 (no constructive discharge when the plaintiff's supervisor filed an unfounded sexual-harassment complaint against him, issued a reprimand inconsistent with the employer's own policy, and required him to move to a less-desirable office); *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1325–26 (10th Cir. 2004) (no constructive discharge from reassignment to lower position and equivalent pay after being "humiliated" by investigation (conducted almost a year before employee's resignation) that indicated she had engaged in misconduct); *Sanchez*, 164 F.3d at 533–34 (no constructive discharge when the plaintiff was the "only teacher required to bring a doctor's note when she was sick," and her supervisor made several ageist remarks).

We affirm the summary judgment on the constructive-discharge claim.

## B.    Disqualification of District Judge

Dr. Rivero appeals the district court's denial of his motion that the district judge recuse himself from hearing the case.  He argues that recusal was required by 28 U.S.C. § 455.  He relies specifically on the following provisions of that section:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
> (b) He shall also disqualify himself in the following circumstances:
> . . .
> (4) He knows that he . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding[.]

Dr. Rivero predicated his motion for recusal on disclosures made by the district judge.  On January 23, 2018, less than four months after the judge was assigned to this case, he sent a letter to the parties to make sure that they were "fully informed and comfortable with my participation in the case." *Rivero*, 2019 WL 1085179 at *23.  The judge disclosed that he had co-taught a one-semester course at the University of New Mexico School of Law on five occasions, including the immediately preceding fall semester.  As compensation for his services during two semesters (including the fall 2017 semester) the Law School paid a student to work as a research assistant for a law-review article being drafted by the judge.  The disclosure letter indicated that there was a possibility that the student would continue to work for the judge on the article in the future.  Neither party raised any objection to the judge's participation in the litigation.

14

The judge made a second disclosure on June 22, 2018, four days before the hearing on the parties' motions for summary judgment was scheduled. The letter clarified that the judge had waived compensation entirely for the other three semesters when he taught at the Law School. He indicated that the University may have treated the waived compensation as a donation. In this second disclosure, the judge also advised the parties of several social ties to the Board of Regents. These included that the president of the Board had attended a dinner party at the judge's home several years before the litigation (probably before the guest had become a member of the Board), that the judge may have met another member of the Board at a lunch before he became a judge, and that a student member of the Board had previously worked as an extern for him. On June 25 the judge's courtroom deputy contacted the parties to confirm that they had reviewed the additional disclosures and to ask whether they had any objections to the judge's hearing the case. Dr. Rivero, through counsel, indicated that he "had no issue with the Court's disclosure." *Rivero*, 2019 WL 1085179, at *105.

At the hearing on June 26, 2018, the judge indicated that he would likely grant Defendant's motion for summary judgment. On July 17 Dr. Rivero filed his motion to recuse.[8] The judge denied the motion in his opinion that also granted summary judgment

---

[8] Dr. Rivero contends that the district court's memorandum opinion and revised order (filed in March 2019) disclosed further connections, but he does not point to any new disclosures that could materially change the recusal calculus. For example, Dr. Rivero says that the district judge disclosed for the first time in the opinion that "he has no connection with the [UNM] School of Medicine or the Health Sciences Center," Aplt. Br. at 55).

to Defendant.  The opinion denied "the Recusal Motion, because it is untimely and the grounds it asserts are legally insufficient." *Id.*  With respect to timeliness, the court noted that "[p]rompt filing 'conserves judicial resources and alleviates the concern that it is motivated by adverse rulings or an attempt to manipulate the judicial process.'" *Id.* (quoting *United States v. Pearson*, 203 F.3d 1243, 1276 (10th Cir. 2000)).  It said that by the time of the hearing, "Dr. Rivero had sufficient time to consider the disclosures and receive advice from counsel on how to proceed," and that "the fact that the Recusal Motion came after the Court indicated it would rule against Dr. Rivero added an air of impropriety to the Recusal Motion, suggesting that the true motive for the Motion is to get the Court off the case because of its adverse rulings against Dr. Rivero." *Id.*  In support it quoted the Supreme Court's statement that § 455 "was never intended to enable a discontented litigant to oust the judge because of adverse rulings made." *Ex parte Am. Steel Barrel Co.*, 230 U.S. 35, 44 (1913).

We affirm.  But rather than address the merits, we choose to affirm the district court's rejection of Dr. Rivero's motion to recuse on the ground that his opening brief on appeal never challenges the rejection of the motion on the ground of untimeliness.  The opening brief does not even mention that alternative ground.  If the district court states multiple alternative grounds for its ruling and the appellant does not challenge all those grounds in the opening brief, then we may affirm the ruling.  *See Anderson v. Spirit Aerosystems Holdings, Inc.,* 827 F.3d 1229, 1236 n.2 (10th Cir. 2016), *as amended* (July 6, 2016) (plaintiffs waived a challenge to one of the district court's rulings "by waiting to

16

make [the challenge] in their reply brief"); *Starkey ex rel. A.B. v. Boulder Cty. Soc. Servs.*, 569 F.3d 1244, 1252 (10th Cir. 2009) ("When an appellant does not challenge a district court's alternate ground for its ruling, we may affirm the ruling.").

## III.　CONCLUSION

We **AFFIRM** the judgment below.