**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 15, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

JEFFREY P. RHOADS, M.D.,

     Plaintiff - Appellant,

v.

STORMONT VAIL HEALTHCARE, INC.,

    Defendant - Appellee.

No. 23-3125
(D.C. No. 5:22-CV-04005-JWB)
(D. Kan.)

_____

### ORDER AND JUDGMENT[*]

_____

Before **TYMKOVICH**, **PHILLIPS**, and **ROSSMAN**, Circuit Judges.

_____

Dr. Jeffrey Rhoads appeals the district court's grant of summary judgment to his former employer, Stormont Vail Healthcare, Inc. (Stormont), in his action alleging unlawful failure to accommodate under the Rehabilitation Act (RA), 29 U.S.C. § 794 and Americans with Disabilities Act (ADA), 42 U.S.C. § 12112. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND[1]

Dr. Rhoads specializes in internal medicine. He was a hospitalist at Stormont employed under a contract he signed in 2019. In 2020, other doctors at Stormont reported concerns that Dr. Rhoads was exhibiting signs of dementia and that his work was showing a steady decline in quality. These concerns led to the formation of an internal committee at Stormont. That committee recommended a temporary restriction of Dr. Rhoads's clinical privileges and referred him to Acumen Assessments, Inc. (Acumen) for evaluation. Dr. Rhoads scheduled an appointment with Acumen for January 2021 and worked his last shift as a hospitalist in November 2020. Also beginning in January 2021, Dr. Rhoads requested and received up to one year of leave under the Family and Medical Leave Act.

Acumen diagnosed Dr. Rhoads with mild neurocognitive disorder. He was not considered fit to return to the practice of medicine at that time, and he agreed he would likely not be able to return to his work as a hospitalist. Dr. Rhoads admitted that, if he made a mistake with a patient, it could cause harm or death. He did not reapply for clinical privileges before his existing privileges were due to expire, which Stormont policy considers a voluntary withdrawal.

Through their respective attorneys, Dr. Rhoads and Stormont engaged in the interactive process to determine whether, and under what conditions, Dr. Rhoads could return to work. Dr. Rhoads's counsel conceded Dr. Rhoads could not return to

---

[1] The facts we recite here are either undisputed or, where disputed, construed in the light most favorable to Dr. Rhoads. *See Markley v. U.S. Bank Nat'l Ass'n*, 59 F.4th 1072, 1080 (10th Cir. 2023).

work as a hospitalist, but he requested a position as an outpatient physician as an accommodation.

Dr. Rhoads took the position that he should work with an Advanced Practice Registered Nurse (APRN) or a Physician's Assistant (PA) for supervision as an accommodation. This position would have cost Stormont between $112,050 and $225,432 per year. For a physician to perform this type of supervision, it would have cost between $458,625 and $1,473,958 per year. Stormont has in place a process called proctoring, which it generally uses for new physicians who recently received privileges. The proctoring process, however, requires a peer (meaning neither an APRN nor a PA could proctor Dr. Rhoads) and it is not designed for open-ended, indefinite-term use in the way Dr. Rhoads proposed.

Dr. Rhoads, through counsel, also initially requested reassignment to an administrative position that did not require patient care. Stormont's attorney requested a conference call with Dr. Rhoads and his attorney to discuss potential reassignment to an administrative position, but no call ever occurred. Later, during the parties' mediation, Stormont proposed reassignment to the Door Screener job,[2] but Dr. Rhoads did not accept that proposal. Dr. Rhoads made no further inquiries regarding reassignment in his correspondence with Stormont.

---

[2] The Door Screener role at Stormont paid $15 per hour. According to his employment contract, Dr. Rhoads's base salary as a hospitalist was $305,000 per year. At some point during discussions with Stormont, Dr. Rhoads joked that he hoped to become "the best paid copy boy ever." Aplt. App. vol. 2 at 379.

Dr. Rhoads filed a charge of discrimination in July 2021.  Stormont terminated his employment in September 2021.  Dr. Rhoads brought suit thereafter, alleging unlawful failure to provide reasonable accommodation, retaliation, and breach of contract.  The district court granted Stormont's motion for summary judgment, and this timely appeal followed.

## DISCUSSION

We review the grant of summary judgment de novo.  *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "On appeal, we examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party."  *Markley v. U.S. Bank Nat'l Ass'n*, 59 F.4th 1072, 1080 (10th Cir. 2023) (internal quotation marks and brackets omitted).

Although Dr. Rhoads's Amended Complaint asserted claims under both the ADA and RA under theories of failure to accommodate, retaliation, and breach of contract, the scope of this appeal is narrower.  He raises no argument that the district court erred in granting summary judgment on his retaliation claim, and so he has waived that issue.  *See Becker v. Kroll*, 494 F.3d 904, 913 n.6 (10th Cir. 2007) ("An issue or argument insufficiently raised in the opening brief is deemed waived.").  He likewise does not contest the district court's conclusion that his breach of contract "claim is redundant of [his] claims for failure to accommodate and for unlawful termination" and that "the legal analysis is substantially the same for this claim" as

4

for the ADA and RA claims.  Aplt. App. vol. 2 at 518–19.  And we apply the same substantive standards to ADA and RA claims.  *See Rivero v. Bd. of Regents of Univ. of N.M.*, 950 F.3d 754, 758 (10th Cir. 2020)  So, we limit our review to the district court's grant of summary judgment on Dr. Rhoads's ADA claims.

The ADA prohibits employers from discriminating against individuals on the basis of their disabilities.  "To establish a prima facie failure-to-accommodate claim, [Dr. Rhoads] had to show: (1) he was disabled; (2) he was otherwise qualified; (3) he requested a plausibly reasonable accommodation; and (4) [Stormont] refused to accommodate his disability."  *Dansie v. Union Pac. R.R. Co.*, 42 F.4th 1184, 1192 (10th Cir. 2022).  "Once an employee requests reassignment as an accommodation, both the employee and employer have an obligation to engage in an interactive process, which . . . requires good-faith communications."  *Herrmann v. Salt Lake City Corp.*, 21 F.4th 666, 674 (10th Cir. 2021) (internal quotation marks omitted).

Dr. Rhoads argues he presented sufficient evidence to create a genuine issue of material fact on two failure-to-accommodate theories:  reassignment to an outpatient physician role with a proctor and reassignment to a role that does not require patient care, such as Door Screener.  But the district court concluded, and we agree, that the first proposed accommodation is not reasonable.  The cost alone of hiring an additional physician to supervise Dr. Rhoads—between nearly one-half to one-and-one-half million dollars—is unreasonable.  And the proctoring system at Stormont was not designed to facilitate the indefinite supervision of a physician whose condition could worsen over time.  Neither an APRN nor a PA could perform this

work because, as non-physicians, they could not legally assume supervisory authority over Dr. Rhoads. *See* Kan. Stat. Ann. § 65-28a08(a) ("Physician assistants practice in a dependent role with a supervising physician . . . ."); *id.* § 65-2872(m) ("The practice of the healing arts shall not be construed to include . . . [n]urses practicing their profession when licensed and practicing under and in accordance with [Kansas law].").

Dr. Rhoads argues the district court overlooked a genuine dispute of material fact regarding whether he posed a direct threat to patient safety if he continued to practice medicine at Stormont. But he admitted that, were he to make a mistake, it could result in serious harm or death to a patient. That is, he admitted that, for the role of outpatient physician, "the essential job duties necessarily implicate the safety of others" so he bore the burden "to show that he can perform those functions without endangering others." *Justice v. Crown Cork & Seal Co.*, 527 F.3d 1080, 1091 (10th Cir. 2008) (internal quotation marks and brackets omitted). He cannot meet this burden; his arguments that he did not pose a direct threat to patient safety all rely on the availability of his proposed proctoring accommodation, which we have already agreed is not reasonable as a matter of law.

We also agree with the district court that Dr. Rhoads cannot establish Stormont's liability for failure to offer him reassignment to an administrative position: Stormont twice broached the possibility of reassignment through its negotiations with counsel, and Dr. Rhoads twice declined. We cannot, on this record, find a genuine issue of material fact as to whether Dr. Rhoads engaged in the

interactive process on this proposed accommodation in good faith. He plainly did not.

## CONCLUSION

We affirm the judgment of the district court.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge