**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 14, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

NU SKIN ENTERPRISES, INC., a
Delaware corporation; PHARMANEX,
LLC, a Delaware limited liability company,

     Petitioners - Appellants,

v.

EARNEST L. RAAB, D.C., d/b/a Success
to Significance LLC, a Washington LLC;
MICHAEL ULRICK; LARRY C.
WIEBER, d/b/a Test for Nutrition of
Washington, LLC, a Washington LLC;
ROSE WIEBER, d/b/a Test for Nutrition of
Washington, LLC, a Washington LLC;
MAX ROBBINS; DEBRA ROBBINS;
TONI RAGSDALE, d/b/a Ragsdale and
Company LLC, an Oklahoma LLC;
WAYNE MATECKI, LAC, d/b/a
Dr. Amy's Integrative Medicine, Inc., a
California corporation; AMY L.
MATECKI, M.D., d/b/a Dr. Amy's
Integrative Medicine, Inc., a California
corporation,

     Respondents - Appellees.

No. 24-4098
(D.C. No. 2:21-CV-00709-RJS-CMR)
(D. Utah)

_____

### ORDER AND JUDGMENT[*]

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

_____

Before **HARTZ**, **MORITZ**, and **ROSSMAN**, Circuit Judges.
_____

Petitioners-Appellants Nu Skin Enterprises, Inc., and its affiliate, Pharmanex, LLC (together, "Nu Skin"), appeal the district court's order staying their petition to compel arbitration in Utah and to enjoin Respondents-Appellees ("Respondents") from prosecuting an action Respondents filed in Washington state court. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

Nu Skin is a Utah-based company that markets beauty and nutritional products in the United States and worldwide through a direct-sales, multi-level marketing network of more than 500,000 independent-contractor distributors. Respondents are lower-level distributors who entered into distributor agreements ("Contracts") with Nu Skin. These standard form Contracts, along with written Policies and Procedures that are specifically incorporated into the Contracts, contain an arbitration agreement requiring Respondents to resolve any "Disputes," as defined in the Contracts, by arbitration in Salt Lake County, Utah, applying Utah law. *See, e.g.*, App. vol. I at 193, 264. Thus, the arbitration agreement consists of a mandatory arbitration provision, a forum-selection clause, and a choice-of-law clause.

In 2021, Respondents filed an action against Nu Skin and a number of its distributors in the Superior Court of the State of Washington in the County of Spokane ("Superior Court"). According to the complaint, Nu Skin and other

2

defendants misrepresented the financial potential of distributorships and the legitimacy of the Nu Skin business enterprises, and they conducted business in ways that advantaged higher-level distributors to the disadvantage of lower-level distributors.  Respondents asserted claims under Washington's Consumer Protection Act, *see* Wash. Rev. Code §§ 19.86.010 to 19.86.920; Washington's Antipyramid Promotional Scheme Act, *see* Wash. Rev. Code. §§ 19.275.010 to 19.275.900; and the federal Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968.  Respondents also asserted claims of tortious interference with business expectancy and negligent misrepresentation.  They sought injunctive relief and damages.

In addition, Respondents alleged the arbitration agreement contained in the Contracts is unenforceable because Nu Skin imposed it unilaterally and, in some cases, retrospectively, in what were contracts of adhesion.  Respondents also alleged they did not agree to arbitrate in Utah, there was no consideration for the arbitration agreement, and the arbitration agreement is unconscionable.  They asked for an order that the arbitration agreement is unlawful or otherwise not binding on them and that they were not required to bring their claims in Salt Lake County, Utah.

In response to the Washington action, Nu Skin filed in the United States District Court for the District of Utah ("Utah district court" or "district court") a petition to compel arbitration, invoking Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, along with a motion to compel arbitration in Utah and to enjoin Respondents from pursuing the Washington action.  Respondents opposed the

3

petition on numerous grounds, including that the arbitration agreement was unconscionable and therefore unenforceable.  Respondents also filed a motion to dismiss the petition.

While Nu Skin's petition and the related motions were pending before the district court, Nu Skin filed a motion to dismiss the Washington action for improper venue based on the Contracts' designation of Utah as the agreed forum.  The Superior Court denied that motion, ruling that "[t]he arbitration agreement is inapplicable to the present matter because this is not a 'Dispute' within the meaning of the Contract[s]."  *Raab v. Nu Skin Enters. Inc.* (*Nu Skin I*), No. 21-2-3272-32, 2022 WL 21816495, at *1 (Wash. Super. Ct. Mar. 8, 2022).  The Superior Court also ruled that "venue" in Washington was "proper . . . based on Washington's strong public policy interests in deciding cases brought under its own consumer protection laws."  *Id.*  Accordingly, the Superior Court denied Nu Skin's motion to dismiss and also denied its alternative request for a stay pending resolution of the petition to compel arbitration it had filed in the Utah district court.

In the wake of *Nu Skin I*, the Utah district court denied Nu Skin's petition to compel arbitration and dismissed the action.  The court concluded that under principles of issue preclusion, *Nu Skin I*'s holding that the arbitration agreement was inapplicable foreclosed Nu Skin's success on the petition.  *See Nu Skin Enters., Inc. v. Raab* (*Nu Skin II*), No. 2:21-cv-709, 2022 WL 2118223, at *6–10 (D. Utah June 13, 2022).  Nu Skin appealed *Nu Skin II* to this court.  We granted the parties'

4

joint motion to abate that appeal pending the outcome of Nu Skin's appeal of *Nu Skin I* in the Washington Court of Appeals.

In October 2023, the Washington Court of Appeals concluded that Respondents' "complaint falls within the definition" of "Disputes," as defined in the Contracts' arbitration agreement. *Raab v. Nu Skin Enters., Inc.* (*Nu Skin III*), 536 P.3d 695, 711 (Wash. Ct. App. 2023). Accordingly, the appeals court reversed *Nu Skin I*'s "determination that the arbitration agreement does not apply because the complaint is not a 'Dispute' within the meaning of the Contract[s]." *Id.* at 719. The Washington Court of Appeals also concluded that a motion to dismiss for improper venue was not the proper procedural device to seek dismissal based on a forum selection clause. *See id.* at 704–05. The court "remand[ed] the issue of whether to enforce the forum selection clause to be addressed anew by the [S]uperior [C]ourt," *id.* at 711, and provided extensive guidance for the Superior Court's analysis of that issue, including what role, if any, the alleged unconscionability of the Contracts' dispute-resolution terms might play in determining whether to enforce the forum-selection clause.[1]

Thereafter, we ordered the parties to file supplemental status reports addressing whether we should lift the abatement of the appeal from *Nu Skin II*. Nu Skin asked us to lift the abatement. Respondents argued that the abatement

---

[1] The Washington Court of Appeals also determined that (1) the parties did not delegate issues concerning arbitrability to a Utah arbitrator, *see Nu Skin III*, 536 P.3d at 706; and (2) the FAA does not require that Nu Skin file its motion to compel arbitration in the Utah district court, *see id.* at 707–08.

should continue "pending final resolution in the Washington state courts of the issue of whether the forum selection clause of the [Contracts] is enforceable." App. vol. 3 at 645. We summarily lifted the abatement on October 25, 2023. *See id.* at 648.

Soon after we lifted the abatement, Respondents asked us to stay the appeal based on a petition for review of *Nu Skin III* that Nu Skin filed in the Washington Supreme Court ("WSC") on November 6, 2023. Respondents argued that the WSC's resolution would be relevant to enforceability of the arbitration agreement. We construed the stay motion as a renewed motion to abate the appeal and summarily denied it. *See id.* at 685–86. After full briefing, we resolved the appeal, concluding that *Nu Skin III*'s reversal of *Nu Skin I*'s ruling that the arbitration agreement was inapplicable compelled us to reverse *Nu Skin II* and remand to the district court. *See Nu Skin Enters., Inc. v. Raab* (*Nu Skin IV*), No. 22-4068, 2024 WL 1178016 at *1 (10th Cir. Mar. 19, 2024).

On remand, Respondents moved the district court for a stay "pending final resolution by the Washington courts of the issues of whether Nu Skin's arbitration agreements are enforceable and whether the disputes at issue are arbitrable." App. vol. II at 554. The district court granted the motion and stayed further proceedings on Nu Skin's petition to compel arbitration for three independent reasons.

The district court's first two reasons were based on two separate doctrines described in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). The district court first relied on the abstention doctrine, specifically, the Supreme Court's observation that it is "appropriate" for federal courts to abstain from

6

deciding cases "present[ing] difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the case then at bar," where "federal review of [a] question . . . would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id.* at 814 (describing the second of three general categories of abstention doctrines). In concluding it was appropriate to abstain on that basis, the district court relied on the Washington Court of Appeals' determination in *Nu Skin III* that "'Utah law is contrary to a fundamental policy of Washington and Washington's interest in determining [arbitrability] outweighs Utah's interest.'" App. vol. 3 at 847–48 (brackets in district court's order) (quoting *Nu Skin III*, 536 P.3d at 718).[2] The district court also relied on the Washington Court of Appeals' conclusion that the Washington case implicated "'matters vitally affecting the public interest' in applying Washington's Consumer Protection and Antipyramid Promotional Scheme Acts 'to [e]nsure fair business practices,'" the latter of which involved "unsettled issues of Washington law." *Id.* at 848 (quoting *Nu Skin III*, 536 P.3d at 717).

---

[2] To elaborate, the Washington Court of Appeals concluded that "the application of Utah law would contravene . . . Washington's policy of protecting plaintiffs against agreements that are either procedurally or substantively unconscionable," which "is heightened if the unconscionable agreements frustrate the ability of a plaintiff to recover for injury from unfair or deceptive trade practices." *Nu Skin III*, 536 P.3d at 718. The court of appeals further concluded that the alleged unconscionability of the Contracts' dispute resolution provisions "could be relevant to . . . denying enforcement of the . . . forum selection clause" and "to whether enforcing a clause that will ultimately require the [Respondents'] claims to be resolved by the contracted-for arbitration would contravene a strong public policy of Washington." *Id.* at 719.

Second, the district court determined that "even if" abstention based on unresolved questions of state law "is not a perfect fit," *id.* at 848, the court would grant a stay based on *Colorado River*'s instruction that in "more limited . . . circumstances" than those "appropriate for abstention," a federal court may "dismiss[] a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration." *Id.* at 818.

Third, the district court determined it would be premature to compel arbitration because a court, and not an arbitrator, must decide Respondents' unconscionability challenge to the arbitration agreement, and therefore a stay was warranted under section 4 of the FAA, 9 U.S.C. § 4.

Nu Skin appealed from the stay order, which is the appeal now before us.

In March 2025, after briefing in this appeal was complete, the WSC issued an opinion in its interlocutory review of *Nu Skin III*. The only issue it resolved was to affirm *Nu Skin III*'s ruling that Nu Skin's motion to dismiss for improper venue was "not the correct procedure to seek enforcement of a contractual forum-selection clause." *Raab v. Nu Skin Enters., Inc.* (*Nu Skin V*), 565 P.3d 895, 898 (Wash. 2025). The WSC also explained that because Respondents had not challenged *Nu Skin III*'s "holding that the Washington Action meets the contractual definition of a Dispute," it was "undisputed that Disputes is broadly defined, and [Respondents'] complaint falls within the definition." *Id.* at 900 (internal quotation marks omitted). The WSC did not reach any additional issues Nu Skin had raised regarding *Nu Skin III*'s guidance to the Superior Court for consideration on remand of issues involving the forum

8

selection clause, which the WSC determined to be "nonbinding dicta." *Id.* at 904. The WSC also declined to issue "an advisory opinion detailing every procedure [to enforce a forum-selection clause] that could potentially apply in this context," and advised the parties that on remand to the Superior Court, they could "file any procedurally proper motion regarding the enforceability of the forum-selection clause." *Id.* at 905.

## II.  Appellate jurisdiction

Concerned about our jurisdiction to consider this appeal, we ordered the parties to file supplemental briefs on the issue.  In its supplemental brief, Nu Skin argues that jurisdiction is proper under *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983).[3]  We agree.  In *Moses H. Cone*, the Supreme Court held that an order granting a stay in an action to compel arbitration pending resolution of a state-court suit involving the identical issue of arbitrability is a final, appealable order within the meaning of 28 U.S.C. § 1291.  *See* 460 U.S. at 8–10. Because the instant case is in a materially identical procedural posture, we conclude that the district court's stay order is a final order over which we have jurisdiction pursuant to § 1291.

## III.  Standard of review

We review district court decisions regarding deferral to state-court litigation for an abuse of discretion.  *See id.* at 19 ("[T]he decision whether to defer to the state

---

[3] Respondents did not take a position on the jurisdictional issue.

courts is necessarily left to the discretion of the district court in the first instance."). A district court abuses its discretion "when it makes a clear error of judgment, exceeds the bounds of permissible choice, or when its decision is arbitrary, capricious or whimsical, or results in a manifestly unreasonable judgment." *United States v. Mobley*, 971 F.3d 1187, 1195 (10th Cir. 2020) (internal quotation marks omitted). But "any error of law is presumptively an abuse of discretion[,] and questions of law are reviewed de novo." *S. Utah Wilderness All. v. Bureau of Land Mgmt.*, 425 F.3d 735, 750 (10th Cir. 2005).

## IV.  Discussion

Nu Skin contends the district court's stay order amounts to an abuse of discretion for three reasons:  (1) the order contravenes this court's orders declining to further abate the previous appeal; (2) the district court failed to follow *Moses H. Cone*; and (3) no exceptional circumstances justify staying the action under the *Colorado River* doctrine.  We reject the first argument, conclude that the second argument overlooks the distinction between abstention and the *Colorado River* doctrine, and need not address the third argument.

### A.    The stay order does not contravene our orders in the prior appeal

Nu Skin argues that the district court "abused its discretion by refusing to follow this Court's prior orders denying Respondents' attempt to stay [the prior appeal] pending further proceedings in the Washington state courts."  Aplt. Opening Br. at 12.  Nu Skin reasons that because Respondents sought "the exact same relief" in the stay motion they filed in the district court as the relief they had twice sought in

this court in the prior appeal, we "should reverse and remand to effectuate [our] prior orders." *Id.* at 12–13.

We disagree. In the supplemental status report Respondents filed in the prior appeal, they predicted the Superior Court would find the forum selection clause unenforceable and therefore asked us to continue the abatement while the Superior Court considered the validity and enforceability of that clause. Then, in the stay motion they filed after we lifted the abatement, Respondents relied on the traditional stay factors when asking us to continue the abatement. *See, e.g.*, *Nken v. Holder*, 556 U.S. 418, 426 (2009) (listing traditional stay factors as likelihood of success on the merits, irreparable harm, and balance of interests). Thus, Respondents never asked this court to consider abating the prior appeal based on any of the abstention or related doctrines they advanced in the stay motion they filed in the district court after our remand. Consequently, our orders denying further abatement of the prior appeal in no way precluded the district court from granting a stay pending the Washington courts' resolution of the enforceability issue.

B.     **Nu Skin's arguments regarding the *Colorado River* doctrine ignore the district court's independent and alternative abstention rationale**

Nu Skin argues that the factors bearing on whether "exceptional circumstances" warrant deference to the proceedings in the Washington courts under *Colorado River*'s "wise judicial administration" test weigh almost identically in this case as they did in *Moses H. Cone*, and therefore the district court was bound to follow *Moses H. Cone*. From that premise, Nu Skin argues that the district court

11

abused its discretion by disregarding *Moses H. Cone* and instead following

*Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706 (1996).  Nu Skin points out that

*Quackenbush* involved abstention under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943),

and argues that *Burford* abstention is limited to cases involving "'proceedings or

orders of state administrative agencies,'" Aplt. Opening Br. at 15 (emphasis omitted)

(quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S.

350, 361 (1989)).  Nu Skin also maintains that the district court abused its discretion

by staying the case under the *Colorado River* doctrine without addressing the factors

relevant to such a decision that the Supreme Court laid out in *Colorado River* and

*Moses H. Cone*.[4]

Nu Skin's arguments do not compel us to reverse.  Federal courts have a

"virtually unflagging obligation . . . to exercise the jurisdiction given them."

*Colorado River*, 424 U.S. at 817.  Thus, "[a]bstention from the exercise of federal

jurisdiction is the exception, not the rule."  *Id.* at 813.  In *Colorado River*, the

Supreme Court discussed the doctrine of abstention and described "three general

categories" of circumstances where abstention is warranted.  *Id.* at 814.  As noted

above, the district court in this case relied on the second of those categories, which is

---

[4] Those factors are "whether either court has assumed jurisdiction over property; the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; . . . the order in which the courts obtained jurisdiction[;] . . . the vexatious or reactive nature of either the federal or the state action[;] whether federal law provides the rule of decision[;] and the adequacy of the state court action to protect the federal plaintiff's rights."  *Fox v. Maulding*, 16 F.3d 1079, 1082 (10th Cir. 1994) (numbering and citations omitted).

applicable to cases involving difficult state-law questions bearing on matters of substantial public concern. *See id.* But in the alternative, the district court relied on the "wise judicial administration" test the Supreme Court applied in *Colorado River*, *id.* at 818, which is commonly referred to as the *Colorado River* doctrine.

Importantly, the three abstention categories are analytically distinct from the *Colorado River* doctrine and serve different purposes. Abstention is "justified . . . only in the exceptional circumstances where the order to the parties to repair to state court would clearly serve an important countervailing interest." *Id.* at 813. In contrast, the *Colorado River* doctrine "concerns . . . efficiency and economy. Its goal is to preserve judicial resources." *D.A. Osguthorpe Fam. P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1233 (10th Cir. 2013) (internal quotation marks omitted). This is what sets the *Colorado River* doctrine "apart from the abstention doctrines that preceded it. In the strictest sense, the *Colorado River* doctrine is not an abstention doctrine at all. Rather, it is a judicially crafted doctrine of efficiency that arose to fill a gap in the federal courts' existing inventory of abstention principles." *Id.* at 1233 n.13.

In its opening brief, Nu Skin does not expressly address the district court's reliance on abstention; its arguments that the district court erred in applying *Quackenbush*, not applying *Moses H. Cone*, and not considering the *Colorado River* doctrine factors challenge only the district court's alternative reliance on the *Colorado River* doctrine. We therefore could conclude Nu Skin has waived any challenge to the district court's abstention rationale. *See Sawyers v. Norton*, 962 F.3d

1270, 1286 (10th Cir. 2020) ("Issues not raised in the opening brief are deemed abandoned or waived." (internal quotation marks omitted)). And we could affirm on that ground alone. *See Rivero v. Bd. of Regents of Univ. of N.M.*, 950 F.3d 754, 763 (10th Cir. 2020) ("If the district court states multiple alternative grounds for its ruling and the appellant does not challenge all those grounds in the opening brief, then we may affirm the ruling.").

However, we elect to read Nu Skin's opening brief as suggesting that because this case involves whether to stay a petition to compel arbitration, and *Moses H. Cone* resolved the same issue based on the *Colorado River* doctrine, the district court was required to do the same and could not rely on the abstention doctrine. But nothing in *Moses H. Cone*, or in any other case we are aware of,[5] prohibits a district court from concluding the abstention doctrine applies when considering whether to stay a petition to compel arbitration. Significantly, in *Moses H. Cone*, the Court noted there had been "no contention . . . that any of the categories of the abstention doctrine [described in *Colorado River*] appl[ied]." 460 U.S. at 14 n.16. In other

---

[5] We have read *Colorado River* as "announc[ing] that federal courts may not use the abstention doctrines to refuse to exercise jurisdiction over a suit for *non-equitable relief* that duplicated ongoing state litigation." *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999) (emphasis added), *abrogated on other grounds by Marshall v. Marshall*, 547 U.S. 293, 311–12 (2006). Here however, Nu Skin sought equitable relief—an order compelling arbitration and enjoining Respondents from pursuing the Washington action. *Cf. P&A Constr. Inc. v. Int'l Union of Operating Eng'rs Loc. 825*, 19 F.4th 217, 229 (3d Cir. 2021) (concluding that "equitable considerations . . . weigh[ed] against compelling joint arbitration"). And Nu Skin has not pointed to any cases prohibiting the use of the abstention doctrine the district court relied on as a ground for staying a federal case seeking an order compelling arbitration.

words, in *Moses H. Cone*, the Court did not turn to the *Colorado River* doctrine because the abstention doctrine *could not* apply, but because no one argued that it *did* apply.

Moreover, *Colorado River* itself turned to the *Colorado River* doctrine because the abstention doctrine did not apply:  "Although this case falls within none of the abstention categories, there are principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts."  424 U.S. at 817.  The Court noted that "[t]hese principles rest on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)).  The Court drove home the distinction between the abstention doctrine and the more-limited *Colorado River* doctrine when it concluded that "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." *Id.* at 818.  But nothing in *Colorado River*'s analysis suggests that the abstention doctrine can't apply in circumstances like those presented in this case.

Given the distinction between the abstention doctrine and the *Colorado River* doctrine, plus the lack of any authority prohibiting the district court from applying the abstention doctrine when considering whether to stay a petition to compel

15

arbitration, we are not persuaded that the district court was required to analyze the stay motion under *Moses H. Cone*'s application of the *Colorado River* doctrine. Furthermore, Nu Skin makes no argument that when staying a case pursuant to the abstention doctrine, a court must evaluate the factors relevant under the *Colorado River* doctrine. Nor are we aware of any authority imposing such a requirement. We therefore affirm the stay order based on the abstention doctrine and need not address Nu Skin's contentions that the district court's alternative *Colorado River* doctrine analysis improperly relied on *Quackenbush*/*Burford* and inadequately assessed the factors *Moses H. Cone* directs courts to consider when applying the *Colorado River* doctrine. *See Rivero*, 950 F.3d at 763.

To the extent we might read Nu Skin's arguments as contending the district court's reliance on *Colorado River*'s second category of abstention amounts to improper *Burford* abstention due to the lack of any state administrative agency proceedings or order in this case, we reject that argument. *Colorado River* cited other cases in addition to *Burford* as "examples" of cases embodying the circumstances appropriate for abstention under the second category. *See* 424 U.S. at 814. Two of the other cases held that abstention was appropriate and did not involve any state administrative agency proceedings or orders. *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S 25, 25 (1959), involved abstention to permit a state court to interpret a state statute governing the resolution of a petition for appropriation a city had filed in state court, asserting a taking of private property. And *Kaiser Steel Corp. v. W.S. Ranch Co.*, 391 U.S. 593, 593–94 (1968), involved

16

abstention to permit a state court to interpret a term in the state's constitution bearing on a water-rights dispute between private parties. Contrary to Nu Skin's implied argument, therefore, the second category of circumstances described in *Colorado River* as warranting abstention is not confined to the circumstances of *Burford*.

We also will construe Nu Skin's argument regarding FAA preemption of state law as suggesting the district court abused its discretion in relying on the abstention doctrine. Nu Skin argues that "there is no real possibility that the Washington courts . . . would find that the public policy of the state precludes the arbitration of claims alleged under their consumer protections laws" because "the FAA preempts any state rule that discriminates against arbitration." Aplt. Opening Br. at 18. But the issue before the Washington courts is not whether they would find that state public policy precludes arbitration of all claims alleging violations of Washington's consumer protection laws but whether enforcement of the arbitration agreement in this case would be unconscionable in light of those laws. And it does not appear the FAA would preempt resolution of that issue. *See Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 650 (2022) (explaining that under the FAA, "[a] court may invalidate an arbitration agreement based on generally applicable contract defenses like fraud or unconscionability, but not on legal rules that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." (internal

quotation marks omitted)). We therefore reject Nu Skin's reliance on FAA preemption as a ground for concluding the district court abused its discretion.[6]

## V. Conclusion

The district court's Order Granting Motion to Stay Proceedings is affirmed.

Entered for the Court

Nancy L. Moritz
Circuit Judge

---

[6] We decline to attempt to transform any of Nu Skin's other opening-brief arguments regarding the district court's reliance on the *Colorado River* doctrine into arguments targeting the court's alternative reliance on the abstention doctrine.

Although Nu Skin has not challenged the district court's reliance on section 4 of the FAA as a third and independent ground for granting the stay, we decline to affirm on that unchallenged ground alone. The district court recognized that the parties were "separately litigating whether the arbitration clause renders formation of the agreement unconscionable," thus putting "the arbitration clause itself . . . at issue." App. vol. III at 852. The district court also recognized that such an issue is for a court, not an arbitrator, to decide. *See id.* at 851–52 & n.73 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006), which explained that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance"). But it is unclear if the district court considered whether, under the FAA, the district court, rather than the Washington courts, should address that question in the first instance.